# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
————
(302) 658-9200
(302) 658-3989 FAX

**Rodger D. S.Smith II**
(302) 351-9205
(302) 498-6209 FAX
rsmith@mnat.com

March 26, 2015

The Honorable Leonard P. Stark
United States District Court
J. Caleb Boggs Federal Building
844 King Street, Room 4124
Wilmington, DE  19801

      Re:    *TQ Beta LLC v. DISH Network Corporation, et al.*
             C.A. No. 14-848 (LPS) (CJB)

Dear Chief Judge Stark:

Defendants submit this letter in connection with the discovery teleconference set for April 2, 2015 (D.I. 29).  Defendants request that the Court resolve in Defendants' favor the disputed provisions of the proposed Protective Order attached hereto as Exhibit A.

**Prosecution Bar - Paragraph 11:**  Both parties agree that a prosecution bar preventing counsel for TQ Beta LLC ("Plaintiff or TQ Beta") from participating in prosecution-related activities is appropriate when that counsel has received material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" ("HIGHLY SENSITIVE MATERIAL").  Both sides also agree that access to such material prevents counsel from participating directly or indirectly in amending claims during post-grant review proceedings.  The only remaining dispute concerns when to allow counsel that has received Defendants' HIGHLY SENSITIVE MATERIAL to participate in such proceedings.

Defendants propose a bright-line approach:  that Plaintiff's counsel who specifically receive the HIGHLY SENSITIVE MATERIAL only participate in post-grant review proceedings, including *inter partes* review, when Plaintiff can no longer amend the claims of the asserted patent.  Once Plaintiff no longer has the right to amend the claims (or willingly gives up the right to do so), Plaintiff's counsel with access to the HIGHLY SENSITIVE MATERIAL is free to participate in such proceedings.  Plaintiff's proposal, in contrast, is needlessly difficult to enforce because it allows any of Plaintiff's counsel that has the HIGHLY SENSITIVE MATERIAL to fully participate in post-grant proceedings including *inter partes* review so long as that person does not advise on claim amendments.  Where a patent is challenged in a post-

The Honorable Leonard P. Stark
March 26, 2015
Page 2

grant proceeding, however, any routine pre-response inquiry by the patent owner, such as in developing arguments for why a claim might overcome a reference or how the patent-holder may propose construing claim terms, necessarily informs on the issue of possible claim amendments. It is impractical if not impossible, therefore, to determine how Plaintiff's counsel would parse his or her advice on a response or evaluation of prior art to exclude advice on claim amendments or the role that advice played in those claim amendments.

**Acquisition Bar - Paragraph 12:**  Plaintiffs' refusal to be subject to an acquisition bar leads to serious deficiencies in the protection of Defendants' trade secret information. Defendants' proposed acquisition bar would prevent, for a reasonable period of time, any person who receives materials marked specifically as "subject to the Acquisition Bar" from participating in, or counseling other clients on, the acquisition of patents relating to the subject matter in this case – time or place shifting content – that would be asserted against Defendants.  This Court has approved "acquisition bars" to limit potential inadvertent use or disclosure of confidential information by individuals regularly engaged in the acquisition of patents.  *See, e.g.*, Ex. B, *St. Clair Intellectual Prop. Consultants, Inc. v. Apple, Inc.*, C.A. No. 09-804-JJF, D.I. 33, at § 6(b) (D. Del. May 13, 2010); Ex. F, *Intellectual Ventures I, LLC v. Altera Corp.*, C.A. No. 10-1065-LPS, D.I. 142, at p.26 (D. Del., Aug. 1, 2012) (entering protective order adopting Defendants' proposed acquisition bar).

The resistance of counsel for TQ Beta to agree to an acquisition bar is worrisome. TQ Beta's lead counsel[1] is a small firm that markets itself as representing plaintiffs in patent infringement litigation on a contingency fee basis.  Ex. C, NIXLAWFIRM.COM, Patent and Trademark Infringement Litigation, http://www.nixlawfirm.com/Practice-Areas (last accessed Mar. 26, 2015).  TQ Beta's counsel also represents non-practicing entities in ninety-seven (97) patent cases, thirty-eight (38) of which are currently pending. (Ex. D)  Given the size of counsel for TQ Beta, and the type of work it does, Defendants are reasonably concerned that those with access to HIGHLY SENSITIVE INFORMATION will, inadvertently or otherwise, use that knowledge to assist in or provide advice related to the acquisition of patents to sue Defendants.

Moreover, such a bar would not impose an undue burden on TQ Beta's counsel. First, the bar applies only to individuals that have received material that Defendants affirmatively mark as "SUBJECT TO ACQUISITION BAR."  Thus, there is no risk that TQ Beta's counsel could inadvertently be subjected to the bar.  Moreover, the bar is narrowly tailored to apply only to the acquisition of patents that would be asserted ***against Defendants***.

Finally, Defendants' concern is not that TQ Beta's counsel would willingly disregard the Protective Order and knowingly use Defendants' trade secrets against them. Rather, as other courts have recognized, Defendants "question[] whether it is possible to avoid the subconscious use of [Defendants'] confidential material in [their] future endeavors."  If Defendants are to disclose their trade secrets, then it is necessary to add a layer of protection against disclosure of confidential information by preventing "attorneys from – inadvertently or otherwise – relying on the confidential information when they advise other parties anticipating

---

[1]      TQ Beta is represented by Nix Patterson & Roach ("NPR"), which has twenty-two (22) attorneys listed on its firm website, http://www.nixlawfirm.com/.

The Honorable Leonard P. Stark
March 26, 2015
Page 3

litigation against [Defendants]."  Ex. E, *Catch a Wave Tech., Inc. v. Sirius XM Radio Inc.*, C.A. No. 3-12-cv-05791, D.I. 47, at p.2 (N.D. Cal. Aug. 6, 2013) (adopting inclusion of an acquisition bar in the protective order).

**Source Code Disputes - *Location of Source Code Production - Paragraph 10(b)*:** Courts have long recognized that a company's source code is tantamount to its crown jewels. *See Adobe Systems, Inc. v. Macromedia, Inc.*, C.A. No. 00-742-JJF, 2001 WL 1414843, *1 (D. Del. Nov. 5, 2001) (acknowledging that source codes "are of critical importance to its business and must be provided the highest form of protection a court can provide in the context of a particular case").  Such concern is even more prevalent because Plaintiff has accused Defendants' most advanced and cutting-edge set-top boxes in the market of infringement and will arguably seek code for those set-top boxes.  Set-top boxes are known to be a favorite target among hackers seeking to gain free broadcast services, and Defendants are balancing Plaintiff's requests for such code with the need to protect the code.

Source code for the accused products may reside at Defendants' offices in California, Colorado, or India.  Defendants have agreed to make all source code that is subject to production available in its counsel's offices in Houston, Texas, the state where every single attorney in NPR is located.  Plaintiff seeks to add two other cities that Plaintiff can choose to have the source code produced.

First, transporting the code between cities to accommodate Plaintiff's proposed three-city approach for source code review would require significant resources and attention by Defendants, the expenditure of which is simply not justified.  Every time Plaintiff wants to access the source code outside of Houston, Defendants would have to encrypt all of the code on a drive, ship it to another city, install the five or more software tools requested by Plaintiff (at Paragraph 10(d)(i)), and secure the environment and space for the inspection for Plaintiff.

Second, making the code available outside of Houston would impose burden on Defendants' Texas counsel for this lawsuit which are only located in Houston, not Dallas or Austin.  Plaintiff's proposal would require Defendants' counsel from Houston to travel to and remain in Plaintiff's designated city every time Plaintiff requested such an inspection.  By contrast, Plaintiff has shown no reason why it would be burdensome for it to travel an hour flight from either of Dallas or Austin to Houston for the inspection when it so chooses.

If the Court has any questions regarding this matter, counsel remains available at the Court's convenience.

Respectfully,

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

RDS/bac
Attachments
cc:    Clerk of Court (via hand delivery; w/attachments)
       All Counsel of Record (via electronic mail; w/attachments)