EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TQ Beta LLC,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 1:14 cv 848** |
| **v.** | § | |
| | § | **Jury Trial Demanded** |
| **DISH Network Corporation;** | § | |
| **DISH DBS Corporation;** | § | |
| **DISH Network L.L.C.;** | § | |
| **EchoStar Corporation;** | § | |
| **EchoStar Technologies L.L.C.;** | § | |
| **Hughes Satellite Systems Corporation;** | § | |
| **Sling Media, Inc.;** | § | |
| | § | |
| **Defendants.** | § | |

## [PROPOSED] PROTECTIVE ORDER

WHEREAS, Plaintiff TQ Beta, LLC and Defendants DISH Network Corporation; DISH DBS Corporation; DISH Network L.L.C.; EchoStar Corporation; EchoStar Technologies L.L.C.; Hughes Satellite Systems Corporation; and Sling Media, Inc. hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1. Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document,

information or material ("Protected Material").  Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL."  The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

2.  Any document produced before issuance of this Order with the designation "Confidential" or "Confidential - Outside Attorneys' Eyes Only" shall receive the same treatment as if designated "RESTRICTED - ATTORNEYS' EYES ONLY" under this Order, unless and until such document is redesignated to have a different classification under this Order.

3.  With respect to documents, information or material designated  "CONFIDENTIAL, "RESTRICTED - ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d)

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "RESTRICTED - ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE," both individually and collectively.

affidavits; and (e) stipulations.  All copies, reproductions, extracts, digests and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4. A designation of Protected Material (i.e., "CONFIDENTIAL," "RESTRICTED – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") may be made at any time.   Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon.

5. "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as set forth in paragraphs 21 or 22 herein:

    a) the receiving Party's Outside Counsel, such counsel's immediate paralegals, contractors, and staff, and any copying or clerical litigation support services working at the direction of such counsel, contractors, paralegals, and staff;

    b) Not more than four (4) representatives of the receiving Party who are officers or employees of the receiving Party, who may be, but need not be, in-house counsel for the receiving Party, as well as their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, provided that:  (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure

exist after proper notice has been given to all Parties as set forth in Paragraph 22 below;

c) Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 21below;

d) Court reporters, stenographers and videographers retained to record testimony taken in this action;

e) The Court, jury, and court personnel;

f) Graphics, translation, design, litigation support services, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

g) Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

h) Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

i) Any other person with the prior written consent of the producing Party.

j) Disclosure to the opposing party of persons mentioned in subsections (f) and (g) of this Section, is not required. However, such persons must sign an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential.

6. A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material contains confidential, proprietary, and/or commercially sensitive information or trade secrets of the Party or a Third

Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

7.   Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action or any related appellate proceeding and shall not be used for any other purpose, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8.   To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "RESTRICTED -- ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY SOURCE CODE."

9.  For Protected Material designated RESTRICTED -- ATTORNEYS' EYES ONLY or CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to the following persons:

  a) the receiving Party's Outside Counsel, such counsel's immediate paralegals, contractors, and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, contractors, and staff;

  b) With respect to Discovery Material produced by the Plaintiff, not more than three (3) in-house counsel of the receiving Party, as well as their immediate paralegals and staff to whom disclosure is reasonably necessary for this case, provided that: (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 22 below;

  c) Any outside expert or consultant retained by the receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party; (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 21 below;

  d) Court reporters, stenographers and videographers retained to record testimony taken in this action;

  e) The Court, jury, and court personnel;

  f) Graphics, translation, design, litigation support services, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

  g)  A Party may not disclose to mock jurors any original, as-produced materials or information produced by another Party designated as "RESTRICTED CONFIDENTIAL OUTSIDE ATTORNEY EYES' ONLY" or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY."  A Party may, however, disclose to mock jurors arguments and materials prepared by its Outside Counsel of Record that are derived from such information or contain only

necessary portions of such information, so long as the disclosed materials do not include the entire document of the as-produced information;

h) Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

i) Any other person with the prior written consent of the producing Party.

j) Disclosure to the opposing party of persons mentioned in subsections (f) and (g) of this Section, is not required. However, such persons must sign an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential.

10. For Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE or CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE, the following additional restrictions apply:

a) Access to, and disclosure of, such Protected Material shall be limited to the following persons:

   i. The receiving Party's Outside Counsel and such Outside Counsel's immediate paralegals, contractors, and staff, and any copying or clerical litigation support services working at the direction of such counsel, contractors, paralegals, and staff;

   ii. Five outside experts or consultants retained by the receiving Party to assist in this action, a number that shall be increased by the producing Party's consent and such consent shall not be unreasonably withheld, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; and (c) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 21 below;

   iii. Court reporters, stenographers and videographers retained to record testimony taken in this action;

    iv.  The Court, jury, and court personnel;

    v.  Graphics, translation, design, litigation support services, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

    vi.  A Party may not disclose to mock jurors any original, as-produced materials or information produced by another Party designated as "RESTRICTED CONFIDENTIAL SOURCE CODE" or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE." A Party may, however, disclose to mock jurors arguments and materials prepared by its Outside Counsel of Record that are derived from such information, so long as the derivative materials do not include the as-produced information itself;

    vii.  Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order;

    viii.  Any other person with the prior written consent of the producing Party.

b) Any Source Code that is produced by Plaintiff shall be made available for inspection in electronic format at the Irving, Texas office of its outside counsel, Nix, Patterson & Roach LLP, or any other location mutually agreed by the Parties. Any Source Code that is produced by Defendants shall be made available for inspection in electronic format at [[[**DEFENDANTS' PROPOSAL**: the Houston office]]] [[[**PLAINTIFF'S PROPOSAL**: upon request by Plaintiff, the Houston, Dallas, or Austin offices]]] of its outside counsel, Baker Botts, L.L.P., or any other location mutually agreed by the Parties.

c) Prior to the first inspection of any requested Source Code, the receiving Party shall provide twenty-one (21) days notice of the Source Code that it wishes to inspect. After receiving notice for any additional inspections, the producing party shall allow for the inspection as soon as possible, but shall have up to seven (7) days to produce the Source Code for inspection. If the receiving Party requests the inspection of additional Source Code that was not previously made available for inspection, the producing party shall allow for the inspection as soon as possible, but shall have up to fourteen (14) days to produce the Source Code for inspection.

d) Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the producing Party:

i. All Source Code shall be made available by the producing Party to the receiving Party's outside counsel and/or experts in a secure room on at least two secured computers without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the producing Party's business. The receiving Party's outside counsel and/or experts may request that commercially available licensed software tools for viewing and searching Source Code be installed on the secured computer provided that the producing Party approves such software tools, approval of which shall not be unreasonably withheld. The parties have approved the following software tools, provided the tools are licensed: SciTools Understand; Notepad ++; WindowsGrep; Beyond Compare; and PowerGrep. The receiving Party must install such licensed software tool(s) as soon as possible after receiving the CD or DVD containing such licensed software tool(s) but not later than 14 days after receiving the CD or DVD containing such licensed software tool(s).

ii. No recordable media, recordable devices, input/output devices or other electronic devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, with the exception of a laptop that has no audio/video recording capability and no internet connectivity, shall be permitted in the source code reviewing room. Physical and software configuration of the laptop will be subject to inspection by the Producing Party prior to being allowed in the review room.

iii. The receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other electronic device except as permitted by agreement of the parties.

iv. The producing Party may visually monitor the activities of the receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way. No Counsel for the Producing Party may visually monitor the activities of the Receiving Party's representatives during any review of Source Code.

v.   No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected.  The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth above.  Counsel for the receiving Party may identify by file name and line number the source code files for printing, and counsel for producing Party will provide the printed documents on watermarked paper immediately if practicable, but if not practicable, within three (3) business days. No more than 500 pages of Source Code may be printed in total. Additionally, the receiving party shall not print any continuous block of source code that results in more than 30 printed pages. If necessary, the receiving party may request to print additional pages in excess of the 500 pages of total source code, or continuous blocks that exceed 30 pages, which request the producing Party shall not unreasonably deny.

vi.   All persons who will review a producing Party's Source Code on behalf of a receiving Party, including members of a receiving Party's outside law firm, shall be identified in writing to the producing Party at least two (2) business days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order.  All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.

vii.   Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room.   The producing Party shall not be responsible for any items left in the room following each inspection session.  Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

viii.   Other than as provided above, the receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without limitation, copying, removing, or transferring the

Source Code onto any recordable media or recordable device. The receiving Party will not transmit any Source Code in any way from the producing Party's facilities or the offices of its outside counsel of record.

ix. To the extent that a receiving Party receives copies of Source Code from the producing Party, the receiving Party's outside counsel of record may make no more than three (3) additional paper copies of any portions of the Source Code received, not including copies attached to court filings, used at depositions, used at hearings, or included in expert reports, and shall maintain a log of all paper copies of the Bates-Stamped printed copies of the Source Code. There is no requirement to log any copies of any portions of the Source Code whose use is associated with court filings, depositions, hearings, or expert reports. The log shall include the names of the recipients of paper copies and locations where the paper copies are stored. Upon three (3) days advance notice to the receiving Party by the producing Party, the receiving Party shall provide a copy of this log to the producing Party.

x. The receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (e.g., a hotel prior to a Court proceeding or deposition).

xi. Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.

xii. Limited portions of Source Code may only be transferred to a computer (other than the stand-alone computer provided in above) by the receiving Party for the purpose of Court proceeding(s) (i.e., preparation for, service of, and/or filing of a pleading, motion, brief, discovery document such as an expert report, exhibit, hearing, deposition, and trial) as set forth above and is at all times subject to the transport restrictions set forth herein. Nothing herein shall prevent outside counsel from using reasonably necessary limited portions of Source Code in electronic form for

11

preparing, filing, or serving pleadings, motions, briefs, exhibits, or expert reports. The parties acknowledge that it may be necessary to temporarily store portions of Source Code on a non-standalone computer in order to facilitate printing or filing of pleadings, exhibits or similar materials. However, such copy of the Source Code Material shall be deleted as soon as practically possible to ensure compliance with this order. Should portions of Source Code in electronic form inadvertently remain on outside counsel's computer as a result of the legitimate uses described above, it shall not be a violation of this Order provided that counsel must delete such electronic copies as soon as they become known or identified. The receiving Party may not, however, electronically transfer all or substantially all of the printouts of the Source Code under this exception, and only upload those limited pages necessary for copying into the types of Court proceeding(s) identified herein.

11. Prosecution Bar. Absent the written consent of the producing Party, any person on behalf of the Plaintiff who receives one or more items designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" by a Defendant shall not be involved, directly or indirectly, in any prosecution activity relating to the scope of claims in patents or patent applications relating to the time or place shifting of content (generally or as described in the patent in suit), before any foreign or domestic agency, including the United States Patent and Trademark Office.  These prohibitions are not intended to and shall not preclude any counsel from participating in proceedings on behalf of a Party challenging the validity of any patent and are not intended, inter alia, to preclude counsel from assisting in reexamination, inter partes review, covered business method review, or reissue proceedings on behalf of a patentee so long as [[[**DEFENDANTS' PROPOSAL**: the party does not or cannot amend the patent claims]]] [[[**PLAINTIFF'S PROPOSAL**: the attorney who has received the HIGHLY SENSITIVE MATERIAL does not participate directly or indirectly in drafting or amending the patent claims.]]] In addition, for the avoidance of doubt, this section does not preclude an attorney or person associated with a Party that has received a Producing

Party's HIGHLY SENSITIVE MATERIAL information from participating, including as counsel of record, in any post-grant patent proceedings before the United States Patent and Trademark Office, including for example reexamination, inter partes review, post-grant review, and/or the transitional program for covered business method patents.  These prohibitions shall begin when access to "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" materials are first received by the affected individual, and shall end thirteen (13) months after the final resolution of this action, including all appeals.

12. [[[**DEFENDANTS' PROPOSAL:** Acquisition Bar.

a) Information Subject to Acquisition Bar. Defendant may further designate Protected Material relating to technical information or financial information concerning actual or projected sales, or business/sales strategy, of products that are able to time or place shift content as "SUBJECT TO ACQUISITION BAR" (hereafter, "Acquisition Bar Materials"). In the event Protected Material is designated "SUBJECT TO ACQUISITION BAR," this paragraph 12 shall apply to such information. The protections afforded by this paragraph 12 shall begin as to any person when Acquisition Bar Materials are first reviewed by that person, and shall end eighteen (18) months after the final resolution of this action, including all appeals.

b) Activities Prohibited by Acquisition Bar.  Absent the written consent of the Producing Party, any person on behalf of the Plaintiff who receives Acquisition Bar Materials shall not participate in the acquisition of any patent relating to systems and methods for time or place shifting content or advising, or counseling clients regarding such acquisition, that are or will be asserted against any party (or related entity).

c) Service of Acquisition Bar Materials. Plaintiff shall provide defendant with an email address and physical address to which discovery, court filings, or other service material containing Acquisition Bar Materials may be sent when electronic service is effected. Defendant shall use only said email address or physical address to serve documents or other items containing Acquisition Bar Materials. The delivery email shall specify in its subject line (where practicable) or in its body that the information contained within or attached to the email constitutes or includes Acquisition Bar Materials. Any physical delivery of Acquisition Bar Materials shall specify where practicable that the materials contained therein include Acquisition Bar Materials. ]]]

13. Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the

work product doctrine, or other privilege, doctrine, or immunity.  If documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material. The recipient(s) shall gather and return all copies of such documents, information or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

14. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

15. Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such

14

DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 9 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

16. Parties may, at the deposition or hearing designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "RESTRICTED - ATTORNEY' EYES ONLY," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," "RESTRICTED CONFIDENTIAL SOURCE CODE", or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.

17. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto discloses or relies on confidential documents, information or material, such confidential

15

portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

18. The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

19. A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto. A party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn and shall state the grounds for the objection. If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions.  In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met.  Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

20. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order.  A copy of the acknowledgment form is attached as Appendix A.

21. Prior to disclosing any DESIGNATED MATERIAL to an outside consultant or expert, the Party seeking to disclose such information shall provide the producing Party with written notice that includes: (i) the name; (ii) an up-to-date curriculum vitae; (iii) the present employer and title; (iv) an identification of all of the Person's past and current employment and consulting relationships over the last five (5) years; (v) an identification of all pending patent applications on which he or she is named an inventor or has any ownership interest; (vi) a list of the cases in which he or she has testified at deposition or trial within the last five (5) years. Further, the Party seeking to disclose DESIGNATED MATERIAL shall provide such other information regarding the Person's professional activities reasonably requested by the producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. In the event such proposed expert is prohibited due to confidentiality obligations to a third party from disclosing a present or prior employment or consultancy, the expert shall so state and shall in that case disclose such information as he/she is permitted to provide regarding the nature of the employment or consultancy (such as, e.g., the industry or technology involved in that employment or consultancy; whether the employment or consultancy was for a competitor of a party; and like information) to enable, to the extent possible, the other party to determine whether or not to object to the expert. Within fourteen (14) days of receipt of the disclosure of the Person, the producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the fourteen (14) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this fourteen (14) day period. If the producing Party objects to disclosure to the Person within such fourteen (14) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good

faith to resolve the dispute on an informal basis.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  If relief is not sought from the Court within that time, the objection shall be deemed withdrawn.  If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

22. Prior to disclosing any DESIGNATED MATERIAL to a Person identified in Paragraphs 5(b) or 9(b) above, the Party seeking to disclose such information shall provide the producing Party with written notice that includes: (i) the name of the Person; and (ii) the current position of the Person.  Further, the Party seeking to disclose DESIGNATED MATERIAL shall provide such other information regarding the Person's professional activities reasonably requested by the producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the Person.  Within fourteen (14) days of receipt of the disclosure of the Person, the producing Party or Parties may object in writing to the Person for good cause.  In the absence of an objection at the end of the fourteen (14) day period, the Person shall be deemed approved under this Protective Order.  There shall be no disclosure of Protected Material to the Person prior to expiration of this fourteen (14) day period.  If the producing Party objects to disclosure to the Person within such fourteen (14) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  If relief is not sought from the Court within that time, the objection shall be deemed withdrawn.  If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

23. As to an expert that has been designated as a testifying expert, the following additional discovery requirements shall apply:

    a)  Testifying experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case.  Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

    b)  Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case. No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

    c)  No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

    d)  Materials, communications, and other information exempt from discovery under the foregoing sections (a)-(c) above shall be treated as attorney-work product for the purposes of these litigations and Order.

24. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contended the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

25. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY" any documents, information or other material, in whole or in part, produced or given by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other

material so produced or given shall be treated as "CONFIDENTIAL" in accordance with this Order.

26. Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the receiving Party's election either be returned to the producing Party or be destroyed. Any and all attorney notes and attorney work-product are excluded from this requirement. The receiving Party shall verify the return or destruction to the producing Party, upon the producing Party's request. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.

27. Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "confidential" [the parties should list any other level of designation, such as "highly confidential," which may be provided for in the protective order] pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

28. The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof.  The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

29. Any Party knowing or believing that any other party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolved the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

30. Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

31. No Party shall be required to identify on their respective privilege log any document or communication related to this litigation dated on or after the filing of this lawsuit, which absent this provision, the Party would have been obligated to so identify on said privilege log.  The Parties shall exchange their respective privilege document logs at a time to be agreed upon by the Parties following the production of documents.

32. Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

33. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

**APPENDIX
A
UNDERTAKING OF EXPERTS OR CONSULTANTS
REGARDING PROTECTIVE ORDER**

I, _____, declare that:

1. My address is: _____
   My current employer is: _____
   My current occupation is: _____
2. I have received a copy of the Protective Order in this action.  I have carefully read and

   understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order.  I will hold in confidence,

   will not disclose to anyone not qualified under the Protective Order, and will use only for

   purposes of this action any information designated as "CONFIDENTIAL," "RESTRICTED -

   - ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE"

   that is disclosed to me.

4. Promptly upon termination of these actions, I will return or destroy all documents and things

   designated as "CONFIDENTIAL,"  "RESTRICTED  -- ATTORNEYS'  EYES  ONLY,"

   or "RESTRICTED CONFIDENTIAL SOURCE CODE" that came into my possession, and

   all documents and things that I have prepared relating thereto, as directed by the outside

   counsel for the party by whom I am employed.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the

   Protective Order in this action.


I declare under penalty of perjury that the foregoing is true and correct.

Signature _____
Date: _____

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 09-804-JJF |
| APPLE INC., | § § | |
| Defendants. | § § § § § | |

## PROTECTIVE ORDER
## REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiff St. Clair Intellectual Property Consultants, Inc. ("Plaintiff") and Defendant Apple Inc. ("Defendant") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

1. **PURPOSES AND LIMITATIONS**

(a)     Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

PROTECTIVE ORDER – PAGE 1

(b)     The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

## 2.     **DEFINITIONS**

(a)     "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(b)     "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party, (ii) partners and associates of such counsel to whom it is reasonably necessary to disclose the information for this litigation, and (iii) outside, independent attorneys contracted to provide legal advice to a Party in connection with this action.

(c)     "Patents-in-suit" means U.S. Patent Nos. "5,138,459," "6,094,219," "6,233,010," and "6,323,899," and any other patent asserted in this action, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

(d)     "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)     "Producing Party" means any Party or non-party entity that discloses or produces any Discovery Material in this case.

**PROTECTIVE ORDER – PAGE 2**

(f)      "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order. Protected Material shall not include: (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(g)      "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h)      "Source Code" means computer code, formulas, or source code specifications that define or otherwise describe in detail the algorithms or structure of software. Source code includes, without limitation, computer code, scripts, assembly, object code, source code listings, object code listings, Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip.

3.      **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

4.      **SCOPE**

(a)      The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

**PROTECTIVE ORDER – PAGE 3**

(b)     Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Discovery Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Discovery Material to an individual who prepared the Discovery Material.

(c)     Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with consent of the Producing Party or by order of the Court.

(d)     This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.     **DURATION**

Even after the termination of this case, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)     Basic Principles.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(b)     Patent Prosecution and Acquisition Bar.     Notwithstanding any other provision of this Protective Order, any Protected Material produced by Apple shall not be disclosed to any person who is involved, directly or indirectly, in: (i) any *ex parte* or *inter partes*

PROTECTIVE ORDER – PAGE 4

proceedings before the United States Patent and Trademark Office ("PTO") or any foreign or domestic agency responsible for issuing patents or (ii) consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the disclosure in patent applications or specifications or the scope of claims in patents or patent applications. Such bar shall only apply to patents and patent applications relating to the functionality, operation, and design of "digital cameras"[1] and/or any feature, functionality, operation, design or technology used in the products accused in the above-captioned case and shall apply during the pendency thereof and for a period of two years thereafter. Such bar does not prevent Plaintiff's trial counsel who have received Protected Material from advising counsel prosecuting any reexamination or reissue of a Patent-in-Suit, *provided* that (i) Plaintiff will retain separate counsel for prosecuting any such reexamination or reissue, (ii) Plaintiff's trial counsel will not prosecute any such reexamination or reissue, (iii) Plaintiff's trial counsel will not reveal any Protected Material to counsel prosecuting any such reexamination or reissue; and (iv) Plaintiff's trial counsel will have no involvement, direct or indirect, in the drafting or amendment of patent claim language. Further, any person employed by, related to, acting on behalf of, or representing Plaintiff, who receives any Protected Material shall not be involved, directly or indirectly, in the acquisition of patents or patent applications, or the rights to any patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of "digital cameras" and/or any feature, functionality, operation, design or technology used in the products accused in the above-captioned case. Notwithstanding the foregoing, this patent prosecution and acquisition bar shall not apply to

---

[1]    As defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010, *viz.*, "[t]he term 'digital camera' includes cameras, camcorders, personal digital assistants ("PDAs"), mobile, cellular, and smart phones, portable media players, and/or components thereof, that can capture and store an image in digital form, including, without limitation, the iPhone, iPhone 3G, iPhone 3GS, and iPod."

PROTECTIVE ORDER – PAGE 5

individuals who have only received documents designated "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" that the parties agree in writing contain information of a purely financial and/or sales nature or documents and/or materials disclosed pursuant to Federal Rules of Evidence 408.

(c) <u>Secure Storage</u>. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

(d) <u>Legal Advice Based on Protected Material</u>. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

(e) <u>Licenses</u>. Two in-house counsel not involved in competitive decision-making shall also be permitted access to all licenses to the patents-in-suit, including all underlying settlement agreements, the amounts collected, expected or scheduled to be collected under each such license and/or agreement, and the royalty rates applicable to each such license and/or agreement (collectively, the "Patents-in-Suit Licensing Material"). To the extent that the Patents-in-Suit Licensing Material may include confidential information of a third party and/or is subject to a protective order or a confidentiality provision, the producing party shall (a) produce such Patents-in-Suit Licensing Material subject to applicable confidentiality provisions; (b) indicate in writing the designation and manner in which such Patents-in-Suit Licensing Material should be treated under this Protective Order; or (c) promptly seek permission to produce such Patents-in-Suit Licensing Material, if required by its terms.

(f)     Limitations.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to Order of the Court.

7.     **DESIGNATING PROTECTED MATERIAL**

(a)     Available Designations.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein:   "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

(b)     Written Discovery and Documents and Tangible Things.     Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.  In the event that original documents are produced for inspection, the

original documents shall be presumed "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" during the inspection and re-designated, as appropriate during the copying process.

           (c)    <u>Depositions and Testimony</u>.  Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty (30) days of receipt of the transcript of the testimony. If no indication on the record is made, all information disclosed during a deposition shall be deemed "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" until the time within which it may be appropriately designated as provided for herein has passed. Any Party that wishes to disclose the transcript, or information contained therein, may provide written notice of its intent to treat the transcript as non-confidential, after which time, any Party that wants to maintain any portion of the transcript as confidential must designate the confidential portions within fourteen (14) days, or else the transcript may be treated as non-confidential. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except by order of the Court, or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the

**PROTECTIVE ORDER – PAGE 8**

deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8. **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a) A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b) Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i) The Receiving Party's Outside Counsel;

(ii) Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii) Electronic discovery consultants and jury consultants selected by counsel in preparation for trial;

(iv) Not more than three (3) representatives of the Receiving Party who are officers or employees of the Receiving Party, who may be, but need not be, in-house counsel for the Receiving Party, as well as their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, provided that: (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

PROTECTIVE ORDER – PAGE 9

(v)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; and (c) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(vi)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vii)   The Court, jury, and court personnel;

(viii)  Graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(ix)    Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(x)     Witnesses for the party producing the document who are being examined on the subject of the document;

(xi)    Authors and recipients (as identified on the document) of such designated material;

(xii)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(xiii)    Any other person with the prior written consent of the Producing Party.

## 9.    DISCOVERY     MATERIAL     DESIGNATED     AS     "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY"

(a)     A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party.    The Parties agree that the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" designation:    trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, licensing materials, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" may be disclosed only to:

(i)      The Receiving Party's Outside Counsel,, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have

access to Discovery Material designated as "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY";

(ii)     Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)     Witnesses for the party producing the document who are being examined on the subject of the document;

(v)     Authors and recipients (as identified on the document) of such designated material;

(vi)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vii)     The Court, jury, and court personnel;

(viii) Graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(ix) Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(x) Any other person with the prior written consent of the Producing Party.

10. **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"**

(a) To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b) Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(c) Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

(i) The Receiving Party's Outside Counsel, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have

access to Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE";

(ii)     Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)     Witnesses for the party producing the document who are being examined on the subject of the document;

(v)     Authors and recipients (as identified on the document) of such designated material;

(vi)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vii)     The Court, jury, and court personnel;

(viii) Graphics, translation, trial preparation and/or design services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A, and for the avoidance of doubt, this provision does not permit jury consultants to view Discovery Material designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE";

(ix) Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(x) Any other person with the prior written consent of the Producing Party.

11. **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a) Any Source Code that is produced by Plaintiff shall be made available for inspection in electronic format at the Minneapolis office of its outside counsel, Robins, Kaplan, Miller & Ciresi L.L.P., or any other location mutually agreed by the Parties. Any Source Code that is produced by Apple Inc. will be made available for inspection at the Palo Alto office of its outside counsel, Simpson Thacher & Bartlett LLP, or any other location mutually agreed by the Parties. Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

(b) Prior to the first inspection of any requested Source Code, the Receiving Party shall provide thirty (30) days notice of the Source Code that it wishes to inspect. The Receiving Party shall provide fourteen (14) days notice prior to any additional inspections.

(c)     Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

(i)     All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or experts in a secure room on a secured computer without Internet access or network access to other computers, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party does not unreasonably object to such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.

(ii)    Prior to the first inspection of any request to review Source Code, the Producing Party shall provide a directory listing of the Source Code stored on the Source

Code Computer. This directory listing, which shall be provided in electronic form, will list the name and location of every file for the Source Code stored on the Source Code Computer. The Producing Party will also provide sufficient information to identify the software development tools used to create the Source Code stored on the Source Code Computer.

(iii)    No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room.

(iv)    The Producing Party shall make available within close proximity of the secure room a location with Internet access where the receiving party may make use of electronic devices including without limitation computers, cellular telephones, and PDAs.

(v)    The Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(vi)    The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way.

(vii)    No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. The Producing Party shall make available a laser printer with commercially reasonable printing speeds for on-site printing during inspection of the Source Code. The Receiving Party

may print limited portions of the Source Code only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report) and for use within depositions. Printed portions shall be limited to no more than ten (10) consecutive pages of continuous Source Code. The Receiving Party may request to print additional consecutive pages of continuous Source Code. Such requests shall not be unreasonably denied by the Producing Party. In addition, printed portions shall be limited to no more than a cumulative eighty (80) pages in total of Source Code. The Receiving Party may request to print additional pages of Source Code. Such requests shall not be unreasonably denied by the Producing Party. The Receiving Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere. Upon printing any such portions of Source Code, the printed pages shall be collected by the Producing Party. The Producing Party shall Bates number, copy, and label "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" any pages printed by the Receiving Party. Within fourteen (14) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code should be produced. The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.

(viii)   All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any other disclosure required under this Order. All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart. The Producing Party shall be entitled to a copy of the log upon five (5) day advance notice to the Receiving Party.

(ix)   Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session.

(x)   Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device. The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of its outside counsel of record.

(xi)   The Receiving Party's outside counsel of record may make no more than five (5) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(c)(vii), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code. The log shall include the names of the reviewers and/or recipients of paper copies and locations where

the paper copies are stored. Upon five (5) day advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(xii) The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.

(xiii) Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought at the deposition shall be securely destroyed in a timely manner following the deposition.

(xiv) Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code). Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. Nothing in this section shall prevent the Receiving Party from creating an electronic copy or image of selected portions of Source Code when necessary for any filing with the Court or service of any pleading or service of other papers. All such pleadings and other papers containing Source Code shall, when filed with the Court, be filed under seal pursuant to Local

**PROTECTIVE ORDER – PAGE 20**

Rules 5.1.3 and 5.2. When any such document or pleading containing portions of source code is served upon another party, that document shall be encrypted using encryption software agreeable in writing to all Parties. The Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the location where the electronic copies are stored. Additionally, any such electronic copies must be labeled "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

      12.    **NOTICE OF DISCLOSURE**

      (a)    Prior to disclosing any Protected Material to any person described in Paragraphs 8(b)(iii), 8(b)(iv), 8(b)(v), 9(b)(iii), or 10(c)(iii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes: (i) the name of the Person; (ii) the present employer and title of the Person; (iii) an identification of all of the Person's past or current employment or consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person; (iv) an up-to-date curriculum vitae of the Person; and (v) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years. Said written notice shall include an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010, or relating to the acquisition of intellectual property assets relating to "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010. The Party

seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. During the pendency of and for a period of two (2) years after the final resolution of this action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010, or the acquisition of intellectual property assets relating to "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010.

        (b)     Within ten (10) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the ten (10) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this ten (10) day period. If the Producing Party objects to disclosure to the Person within such ten (10) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is

sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c) For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

(d) Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(e) An initial failure to object to a Person under this Paragraph 12 shall not preclude the nonobjecting Party from later objecting to continued access by that Person for good cause. If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection. If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection. Notwithstanding the foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

13.    **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)    A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)    Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection. Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)    The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute. The Producing Party shall have the burden of justifying the disputed designation;

(ii)    Failing agreement, the Receiving Party may bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation. The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)    Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws

such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

14.     **SUBPOENAS OR COURT ORDERS**

(a)     If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

15.     **FILING PROTECTED MATERIAL**

(a)     Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file in the public record any Protected Material.

(b)     Any Receiving Party is authorized under Local Rules 5.1.3 and 5.2 to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order. Nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

16.     **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for

return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

        (b)     Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

        (c)     Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

      17.    **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

        (a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties. Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall destroy all Discovery Material that was not designated properly.

(b)     A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives the Protected Material with the correct confidentiality designation, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 17(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Protected    Material    produced    without    the    designation    of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" may be so designated subsequent to production when the Producing Party failed to make such designation at the time of production through inadvertence or error.  If Discovery Material is designated subsequent to production, the Receiving Party promptly shall collect any copies that have been provided to individuals so that they can be re-labeled with the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" designation.  Notwithstanding the above, such subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL –

ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(a).

18.    **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)    In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)    Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

19.    **FINAL DISPOSITION**

(a)    Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material, at the option of the Producing Party. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

(b)    All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed.  Notwithstanding the provisions for return of Discovery Material,

outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes. With exception of any retained pleading or correspondence as allowed under this paragraph, all parties shall destroy any documents containing Source Code, including any consultant or attorney work product documents that contain Source Code, and shall provide a certification in writing to the Producing Party not later than ninety (90) days after the final disposition of this Case that such destruction has been completed.

20.     **DISCOVERY FROM EXPERTS OR CONSULTANTS**

(a)     Testifying experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case. Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

(b)     Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case. No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

(c)     No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

(d)     Materials, communications, and other information exempt from discovery under the foregoing Paragraphs 20(a)–(c) shall be treated as attorney-work product for the purposes of this litigation and Order.

(e)     Nothing in Paragraphs 20(a)–(c) shall alter or change in any way the requirements in Paragraph 11 regarding printing of Source Code, and Paragraph 11 shall control in the event of any conflict.

21.     **MISCELLANEOUS**

(a)     Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)     Termination of Matter and Retention of Jurisdiction. The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Determination of the above-captioned matter. The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

(c)     Successors. This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d)     Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. This Order shall not

**PROTECTIVE ORDER – PAGE 30**

constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e)     Burdens of Proof.     Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)     Modification by Court.     This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Order. All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the District of Delaware.

(g)     Discovery Rules Remain Unchanged.     Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Delaware, or the Court's own orders. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Delaware, or the Court's own orders.

SO ORDERED this $\frac{13}{\text{day of}}$ day of __May__ 2010.

United States District Judge

**PROTECTIVE ORDER – PAGE 31**

EXHIBIT C

**NIX PATTERSON & ROACH, LLP**

Securities Fraud and Corporate
Governance Class Actions

Patent and Trademark
Infringement Litigation

Complex Commercial Litigation
and Class Actions

Asbestos & Other Toxic Tort

Products Liability

General Personal Injury
Litigation

Pharmaceutical Litigation

Qui Tam

FELA Litigation

Nursing Home Litigation

## Patent and Trademark Infringement Litigation

Nix, Patterson & Roach, L,L,P, ("NPR") has a nationally known intellectual property litigation practice, The Firm represents individuals and companies as plaintiffs in the trial of intellectual property cases, including patent, copyright and trademark infringement, trade secret misappropriation, unfair competition, and other business to The Firm's attorneys have represented clients in state and federal district court, federal courts of appeal, and th Patent and Trademark Office,

We thrive on high-stakes, complex litigation and enjoy being in the courtroom, Our cases frequently involve ten hundreds of millions of dollars at stake for the parties involved, NPR often litigates against major corporations represented by the leading defense firms in the world, Individuals and companies frequently come to us when intellectual property rights are being infringed by others and need to be enforced vigorously to ensure that just done,

Nix, Patterson & Roach has the experience, expertise, and resources to handle complex intellectual property litigation anywhere in the country and to level the playing field for our clients. Our clients are technological innovators and so are we. We embrace high technology in every facet of our practice and employ the latest technology at trial.

The Firm's home offices in Daingerfield and Texarkana are in the heart of the Eastern District of Texas, The Ea District is the leading venue in the country for patent infringement litigation, The Firm's trial attorneys have tried numerous jury trials in the Eastern District and three of our attorneys served as federal law clerks for Eastern D Judges Schell, Ward and Steeger (deceased),

In order to better serve our clients from across the country, NPR also has state-of-the-art offices in Dallas and A

Representative cases include:

- **DataTreasury patent litigation –** NPR represents DataTreasury Corporation, which owns pionee patents involving image capture, centralized processing, and the electronic storage of documents check information.
  - NPR successfully represented DataTreasury in a patent infringement lawsuit against ban giant JPMorgan Chase for infringement of U.S. Patent Nos. 5,910,988 and 6,032,137, wh culminated in a confidential settlement in July 2005. On behalf of DataTreasury, the Firm also negotiated and obtained settlements from NCR, Ingenico, MagTek, ACS, RDM, Net Deposit, and licenses from Merrill Lynch and Diebold,
  - NPR continues to represent DataTreasury in multiple patent infringement lawsuits in th Eastern District of Texas against dozens of major financial institutions including Wells Fa Bank of America, Wachovia, First Data, and Citibank,
- **Vision Advancement v. Vistakon –** NPR represented the inventor of a bifocal lens design in litigation against Vistakon, a division of Johnson and Johnson, The case involved alleged infringement of U.S. Patent No. 4,898,461, No. 5,657,108, No. 5,877,839, No. 6,186,625, No. 5,270,744, No. 6,527,389, No 5,166,711, and No, 6,409,340, The claim construction ruling from case is reported at *Vision Advancement, LLC v. Vistakon*, No, 2:05-cv-455, 2007 U,S, Dist, LED 5742 (E.D. Tex. Jan. 26, 2007).
- **Guaranty Bank of Mount Pleasant trademark litigation –** The Firm represented Guaranty Ban Mount Pleasant in a trademark infringement case against Guaranty Federal Bank, F.S.B. doing business as Guaranty Bank. The Firm tried this case in a week-long injunction hearing before a court and successfully obtained an injunction order against the Defendant prohibiting the Defend from using the name Guaranty Bank in the State of Texas. The case was later resolved between parties upon confidential terms.

We are among a handful of law firms who will enforce plaintiffs' intellectual property rights on a contingent fee which enables plaintiffs to enforce their intellectual property rights against major corporations when they othen could not afford to and ensures that our compensation is based solely on results achieved, When justice must done, it's the results that matter.

Copyright © 2003-2006 Nix, Patterson & Roach, L,L,P, All Rights Reserved,
Contact Us: 205 Linda Drive | Daingerfield, TX 75638, 3600 N Capital of Texas # B350 | Austin, TX 78746
Ste 1900, 5215 North O'Connor Road | Irving, TX 75039, 2900 Saint Michael Dr # 501 | Texarkana, TX 75503

Institutional Investors  Employee

EXHIBIT D



| | Attorney | contains "Derek Gilliland" |
|---|---|---|
| | Law firm | begins "Nix Patterson & Roach" |

| Name | Number | District | Filed | Terminated |
|---|---|---|---|---|
| **Secure Axcess, LLC v. Dell Inc. et al** | 6-15-cv-00235 | TXED | March 19, 2015 | |
| **Secure Axcess, LLC v. HP Enterprise Services, LLC** | 6-15-cv-00208 | TXED | March 16, 2015 | |
| **Secure Axcess, LLC v. Dimension Data Cloud Solutions, Inc.** | 6-15-cv-00210 | TXED | March 16, 2015 | |
| **Secure Axcess, LLC v. Fujitsu Network Communications, Inc.** | 6-15-cv-00212 | TXED | March 16, 2015 | |
| **Secure Axcess, LLC v. Ericsson, Inc.** | 6-15-cv-00211 | TXED | March 16, 2015 | |
| **Secure Axcess, LLC v. NEC Cloud Communications America, Inc.** | 6-15-cv-00209 | TXED | March 16, 2015 | |
| **DSS Technology Management, Inc. v. Intel Corporation et al** | 6-15-cv-00130 | TXED | February 16, 2015 | |
| **Intellectual Ventures II LLC v. BITCO General Insurance Corporation f/k/a Bituminous Casualty Corporation et al** | 6-15-cv-00059 | TXED | January 20, 2015 | |
| **Intellectual Ventures II LLC v. Great West Casualty Company** | 6-15-cv-00060 | TXED | January 20, 2015 | |
| **Azure Networks, LLC v. Vizio, Inc.** | 6-15-cv-00048 | TXED | January 15, 2015 | |
| **Azure Networks LLC v. CSR plc et al** | 6-15-cv-00036 | TXED | January 13, 2015 | |
| **Azure Networks LLC v. MediaTek Inc. et al** | 6-15-cv-00037 | TXED | January 13, 2015 | |
| **Azure Networks LLC v. Dell Inc** | 6-15-cv-00040 | TXED | January 13, 2015 | |
| **Azure Networks LLC v. Marvell Semiconductor Inc** | 6-15-cv-00035 | TXED | January 13, 2015 | |
| **Azure Networks LLC v. Qualcomm Incorporated et al** | 6-15-cv-00034 | TXED | January 13, 2015 | |
| **Azure Networks, LLC v. Broadcom Corporation** | 6-15-cv-00033 | TXED | January 13, 2015 | |
| **Azure Networks LLC v. ASUS Computer International et al** | 6-15-cv-00039 | TXED | January 13, 2015 | |
| **Azure Networks, LLC v. Samsung TeleCommunications America, LLC et al** | 6-15-cv-00019 | TXED | January 12, 2015 | |
| **Azure Networks, LLC v. Dell, Inc.** | 6-15-cv-00022 | TXED | January 12, 2015 | January 13, 2015 |
| **Azure Networks, LLC v. HTC Corporation et al** | 6-15-cv-00024 | TXED | January 12, 2015 | |
| **Azure Networks, LLC v. Toshiba America Information Systems, Inc. et al** | 6-15-cv-00028 | TXED | January 12, 2015 | |
| **Azure Networks, LLC v. ZTE Corporation et al** | 6-15-cv-00029 | TXED | January 12, 2015 | |
| **Azure Networks, LLC v. Amazon.com Inc.** | 6-15-cv-00020 | TXED | January 12, 2015 | |
| **Azure Networks, LLC v. Garmin International, Inc.** | | TXED | | |

|  | 6-15-cv-00030 |  | January 12, 2015 |  |
| --- | --- | --- | --- | --- |
| Azure Networks, LLC v. Sony Electronics, Inc. et al | 6-15-cv-00027 | TXED | January 12, 2015 |  |
| Azure Networks, LLC v. Acer America Corporation et al | 6-15-cv-00018 | TXED | January 12, 2015 |  |
| Azure Networks, LLC v. Texas Instruments Incorporated | 6-15-cv-00032 | TXED | January 12, 2015 |  |
| Azure Networks, LLC v. Panasonic Corporation et al | 6-15-cv-00026 | TXED | January 12, 2015 |  |
| Azure Networks, LLC v. LG Electronics MobileComm USA, Inc. et al | 6-15-cv-00025 | TXED | January 12, 2015 |  |
| Azure Networks, LLC v. Hewlett-Packard Company | 6-15-cv-00023 | TXED | January 12, 2015 |  |
| Azure Networks, LLC v. Intel Corporation | 6-15-cv-00031 | TXED | January 12, 2015 |  |
| Azure Networks, LLC v. ASUS Computer International et al | 6-15-cv-00021 | TXED | January 12, 2015 | January 13, 2015 |
| Intellectual Ventures I LLC et al v. Highmark, Inc. et al | 2-14-cv-01131 | PAWD | August 22, 2014 | November 18, 2014 |
| Intellectual Ventures I LLC et al v. Old Republic General Insurance Group, Inc. et al | 2-14-cv-01130 | PAWD | August 22, 2014 | November 18, 2014 |
| Intellectual Ventures I LLC et al v. Erie Indemnity Company et al | 1-14-cv-00220 | PAWD | August 21, 2014 |  |
| TQ Beta, LLC v. DISH Network Corporation et al | 1-14-cv-00848 | DED | June 30, 2014 |  |
| In re: Fidelity National Information | 14-0138 | CAFC | May 23, 2014 | July 10, 2014 |
| Collaborative Agreements, LLC v. Adobe Systems Incorporated et al | 1-14-cv-00356 | TXWD | April 25, 2014 |  |
| DSS Technology Management, Inc. v. Taiwan Semiconductor Manufacturing Company, Ltd. et al | 2-14-cv-00199 | TXED | March 10, 2014 |  |
| VirtualAgility Inc. v. Salesforce.com, Inc. | 14-1232 | CAFC | January 14, 2014 | July 10, 2014 |
| Secure Axcess, LLC v. Bank of the West et al | 6-13-cv-00779 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Ocwen Financial Corporation | 6-13-cv-00783 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Charles Schwab Bank et al | 6-13-cv-00781 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Texas Capital Bank, N.A. et al | 6-13-cv-00786 | TXED | October 16, 2013 | June 19, 2014 |
| Secure Axcess, LLC v. Cadence Bank, National Association | 6-13-cv-00780 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. T. Rowe Price Investment Services, Inc. et al | 6-13-cv-00787 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Orange Savings Bank, SSB et al | 6-13-cv-00784 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Raymond James & Associates, Inc. et al | 6-13-cv-00785 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Commerce Bank et al | 6-13-cv-00782 | TXED | October 16, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Trustmark National Bank et al | 6-13-cv-00788 | TXED | October 16, 2013 | November 10, 2014 |

| | | | | |
|---|---|---|---|---|
| Secure Axcess, LLC v. Vanguard Group, Inc. et al | 6-13-cv-00724 | TXED | September 27, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Sovereign Bank, National Association | 6-13-cv-00723 | TXED | September 27, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. GE Capital Retail Bank et al | 6-13-cv-00720 | TXED | September 27, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Ally Bank et al | 6-13-cv-00718 | TXED | September 27, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. U.S. Bank National Association et al | 6-13-cv-00717 | TXED | September 27, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. PNC Bank, National Association et al | 6-13-cv-00722 | TXED | September 27, 2013 | November 10, 2014 |
| Secure Axcess, LLC v. Nationwide Bank et al | 6-13-cv-00721 | TXED | September 27, 2013 | November 10, 2014 |
| Stutts v. J & D Sales, Inc | 2-13-cv-00500 | TXED | June 18, 2013 | October 24, 2013 |
| DataTreasury Corporation v. Jack Henry & Associates, Inc. et al | 2-13-cv-00433 | TXED | May 28, 2013 | |
| DataTreasury Corporation v. Fidelity National Information Services, Inc. et al | 2-13-cv-00432 | TXED | May 28, 2013 | |
| DataTreasury Corporation v. Fiserv, Inc. | 2-13-cv-00431 | TXED | May 28, 2013 | |
| VirtualAgility, Inc. v. Salesforce.com, Inc. et al | 2-13-cv-00011 | TXED | January 4, 2013 | November 4, 2014 |
| Stutts v. Lava Heat Italia | 2-13-cv-00012 | TXED | January 4, 2013 | January 10, 2013 |
| Alisanos, LLC v. Medtronic, Inc. | 0-13-cv-60009 | FLSD | January 2, 2013 | March 8, 2013 |
| Stutts v. BSN Sports, Inc. | 2-12-cv-00705 | TXED | November 6, 2012 | August 13, 2013 |
| Astute Technology, LLC v. Learner's Digest International, LLC | 2-12-cv-00689 | TXED | October 26, 2012 | June 4, 2014 |
| Alisanos, LLC v. Intuitive Surgical, Inc. | 0-12-cv-61978 | FLSD | October 5, 2012 | January 25, 2013 |
| Rick Meritt Investments Ltd v. All Seasons Feeders, LTD et al | 6-11-cv-00466 | TXED | September 8, 2011 | July 9, 2013 |
| TuitionFund, LLC v. First Horizon National Corporation et al | 3-11-cv-00852 | TNMD | September 8, 2011 | February 12, 2014 |
| ICH Intellectual Capital Holdings, Inc. v. Badger Meter, Inc., et. al. | 6-11-cv-00468 | TXED | September 8, 2011 | August 5, 2013 |
| E-Micro Corporation v. Google, Inc. et al | 6-11-cv-00465 | TXED | September 8, 2011 | September 7, 2012 |
| Datatreasury Corporation v. Austin Bancorp, Inc. et al | 6-11-cv-00470 | TXED | September 8, 2011 | November 20, 2013 |
| Stutts v. Rapid Cool Misting Systems | 2-11-cv-00389 | TXED | September 7, 2011 | August 26, 2013 |
| ThinkOptics, Inc. v. Nintendo of America, Inc., et. al. | 6-11-cv-00455 | TXED | September 2, 2011 | August 28, 2014 |
| Datatreasury Corporation v. U S Bank National Association | 2-11-cv-00346 | TXED | August 2, 2011 | December 28, 2011 |
| Datatreasury Corporation v. U.S. Bancorp et al | 5-11-cv-00108 | TXED | June 2, 2011 | October 11, 2011 |
| Azure Networks LLC, et. al. v. CSR PLC, et. al. | | TXED | March 22, 2011 | |

| | 6-11-cv-00139 | | | |
|---|---|---|---|---|
| National Institute for Strategic Technology Acquisition and Commercialization (NISTAC) v. Nissan North America, Inc., et. al. | 2-11-cv-11039 | MIED | March 15, 2011 | October 16, 2012 |
| Patent Group, LLC v. Wheaton Resource Corporation | 2-11-cv-00147 | TXED | March 7, 2011 | June 29, 2011 |
| Datatreasury Corporation v. Capital One Financial Corporation et al | 6-11-cv-00092 | TXED | February 23, 2011 | September 17, 2012 |
| Patent Group, LLC v. Logitech, Inc. | 2-11-cv-00079 | TXED | February 7, 2011 | May 31, 2011 |
| Patent Group, LLC v. Hot Foot International of America, Inc. | 2-11-cv-00035 | TXED | January 25, 2011 | November 4, 2011 |
| TuitionFund, LLC v. SunTrust Banks, Inc., et. al. | 3-11-cv-00069 | TNMD | January 25, 2011 | April 21, 2014 |
| Troll Busters, LLC v. Roche Diagnostics GMBH et al | 3-11-cv-00056 | CASD | January 10, 2011 | October 11, 2011 |
| Secure Axcess, LLC. v. Bank of America Corp., et. al. | 6-10-cv-00670 | TXED | December 16, 2010 | September 30, 2013 |
| Patent Group, LLC v. Matco Tools et al | 2-10-cv-00549 | TXED | December 10, 2010 | April 13, 2011 |
| Syntrix Biosystems, Inc. v. Illumina Inc. | 3-10-cv-05870 | WAWD | November 24, 2010 | June 19, 2013 |
| Hightower v. Unique Gift Mart Corporation | 2-10-cv-00485 | TXED | November 12, 2010 | October 6, 2011 |
| National Institute for Strategic Technology Acquisition and Commercialization (NISTAC) v. Nissan North America, Inc. et al | 6-10-cv-01346 | KSD | October 4, 2010 | March 15, 2011 |
| Hightower v. Sud Chemie, Inc. | 2-10-cv-00366 | TXED | September 15, 2010 | December 20, 2010 |
| Tele-Cons, et. al. v. General Electric Company, et. al. | 6-10-cv-00451 | TXED | September 1, 2010 | January 29, 2013 |
| NorthPeak Wireless, LLC v. 3Com Corporation et al | 3-09-cv-00602 | CAND | February 10, 2009 | |
| Datatreasury Corporation v. Washington Mutual, Inc. et al | 2-08-cv-00356 | TXED | September 17, 2008 | July 19, 2011 |
| Datatreasury Corporation v. Citizens Bank of Rhode Island et al | 2-08-cv-00187 | TXED | May 2, 2008 | May 19, 2011 |
| Ocular Research of Boston, Inc. v. Allergan | 2-07-cv-00385 | TXED | August 31, 2007 | June 1, 2010 |
| Datatreasury Corporation v. Wells Fargo & Company et al | 2-06-cv-00072 | TXED | February 24, 2006 | August 2, 2011 |
| Data Treasury Corporation v. Remitco LLC et al | 5-05-cv-00173 | TXED | September 9, 2005 | November 21, 2008 |
| Data Treasury Corporation v. Wells Fargo & Co et al | 2-05-cv-00291 | TXED | June 28, 2005 | June 3, 2009 |
| Data Treasury Corporation v. Wachovia Corporation et al | 2-05-cv-00293 | TXED | June 28, 2005 | June 3, 2009 |
| Data Treasury Corporation v. Citigroup, Inc et al | 2-05-cv-00294 | TXED | June 28, 2005 | December 23, 2008 |

Copyright © 2015 by Hopkins Bruce Publishers, Corp. No claim to copyrights to original U.S. government work. Receipt and use of this and derivative works is subject to your agreement to the Terms of Use available at http://www.docketnavigator.com/entry/terms.

EXHIBIT E

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VOICE DOMAIN TECHNOLOGIES, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 13-40138-TSH** |
| APPLE, INC., | ) | |
| Defendant. | ) | |
| | ) | |

## <u>ORDER</u>

**October 8, 2014**

Hennessy, M.J.

By Order of Reference dated July 29, 2014, pursuant to 28 U.S.C. § 636(b)(1)(A)
(Docket #47), this matter was referred to me for a ruling on the competing Motions for
Protective Orders of Plaintiff Voice Domain Technologies, LLC ("Voice Domain") (Docket #44)
and Defendant Apple, Inc. ("Apple") (Docket #45).  These matters are now ripe for adjudication.
For the reasons that follow, the competing Motions are both DENIED.  The Parties are hereby
ORDERED to submit a Proposed Protective Order consistent with the reasoning and dictates of
this Order.

## I.      BACKGROUND

Voice Domain is a Connecticut limited liability company founded by Bruce Barker in
1999 with a principal place of business in Westborough, Massachusetts.  (Docket #1 at ¶ 1).
Barker is the inventor of several patents and Voice Domain is the assignee of his inventions.
(<u>Id.</u>).  Voice Domain is the owner of United States patent number 6,281,883 (the "'883 Patent"),
which was issued by the United States Patent and Trademark Office ("PTO") on August 28,

2001 to Barker and assigned to Voice Domain.  (Id. at ¶ 2).  Voice Domain has licensed the '883 Patent to corporations whose products incorporate Barker's inventions.  (Id. at ¶ 3).

In January 2013, Barker contacted Apple about the need to license the '883 Patent. (Docket #44 at 4).  On November 25, 2013, Voice Domain filed suit against Apple alleging that Apple has infringed at least claim 1 of the '883 Patent through the inclusion of Siri voice command functionality in their devices.  (Docket #1 at ¶ 10).  Apple filed its answer and a counterclaim for a declaration of non-infringement, invalidity, and unenforceability on March 7, 2014. (Docket #22).

On May 13, 2014, Judge Hillman adopted the parties' joint statement as the scheduling order.  (Docket #36).  Pursuant to that schedule, Voice Domain was required to serve and file preliminary disclosure of the claims infringed and produce all documents supporting its contentions by June 3, 2014.  (Docket #31 at 2).  Apple was required to serve and file its Preliminary Invalidity and Non-Infringement Contentions and produce documents relevant to its invalidity defenses by August 11, 2014.  (Id. at 2-3).  Pursuant to the scheduling order, Apple was also required to produce documents sufficient to show operation of the accused products or methods identified by Voice Domain in its preliminary infringement disclosures by August 11, 2014, if a protective order had been entered.  (Id. at 3).  On August 11, 2014, Apple filed its preliminary invalidity and non-infringement contentions.  (Docket #55).  As no protective order had been entered, Apple did not produce documents sufficient to show operation of the accused products or methods identified by Voice Domain in its preliminary infringement disclosures on August 11, 2014.

Voice Domain filed its Motion for a Protective Order on July 3, 2014.  (Docket #44).  On July 17, 2014, Apple filed its opposition and a Motion for Protective Order.  (Docket #45).  After

extensive briefing, a hearing on the matter was held on September 5, 2014.  (Docket #57).

Following the hearing, Apple and Voice Domain each filed a supplemental memorandum

addressing issues raised at the hearing.  (Dockets #61 and 65, respectively).

II.    STANDARD

The scope of discovery generally extends to "any nonprivileged matter that is relevant to

any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  If a party or any person from whom

discovery is sought shows good cause, the Court may issue an order to protect that party or

person "from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R.

Civ. P. 26(c)(1).  "Rule 26(c) is highly flexible, having been designed to accommodate all

relevant interests as they arise.  The 'good cause' standard in the Rule is a flexible one that

requires an individualized balancing of the many interests that may be present in a particular

case."  Gill v. Gulfstream Park Racing Ass'n, 339 F.3d 391, 402 (1st Cir. 2005) (quoting United

States v. Microsoft Corp, 165 F.3d 952, 959-60 (D.C. Cir. 1999)) (alterations omitted).  The

burden is on the party seeking the more restrictive protective order to show good cause under

Rule 26(c).  Pharmachemie, B.V. v. Pharmacia, Inc., No. 95-40085-NMG, 1998 U.S. Dist.

LEXIS 2192, at *4 (D. Mass. Jan. 30, 1998) (Swartwood, M.J.).  To show good cause, the party

seeking the protective order must demonstrate a particular need for protection; "[b]road

allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy

the Rule 26(c) test."  Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986),

quoted in Parmachemie, 1998 U.S. Dist. LEXIS 2192, at *4.

III.    ANALYSIS

The parties are in agreement as to the majority of the provisions of the proposed protective orders; however, there are three proposed provision as to which the parties disagree.[1] Voice Domain argues that these disputed provisions are unnecessary as the agreed-to provisions of the protective order and other facts already sufficiently protect Apple and any additional restrictions would allow Apple to use the protective order as a tactic to game the outcome of the case.

A.    Confidentiality Provisions

Apple's proposed protective order has three tiers of confidentiality designations: CONFIDENTIAL, CONFIDENTIAL – ATTORNEYS' EYES ONLY ("AEO"),  and CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE ("SOURCE CODE").  (Docket #45-2.  Material designated as CONFIDENTIAL can be seen by a party's outside counsel and a limited number of a party's employees.  (Id. at ¶ 8).  Material designated as AEO and SOURCE CODE may be seen by a party's outside counsel who is not involved in "competitive decision making" for a party, but not in-house counsel.  (Id. at ¶¶ 9-10).  The parties agree that Barker is expressly prohibited from accessing material designated as SOURCE CODE.  (Docket #44-9 at 3; Docket #45 at 4 n.3).  However, the parties disagree over whether Barker should be allowed access to material designated AEO.

Apple's proposed AEO provision reads, in relevant part:

(a)  A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only if such material contains or reflects information that is extremely confidential and/or extremely sensitive in nature and the Producing Party reasonably believes in good faith that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive

---

[1] Apple's proposed protective order is available at Docket #45-2.  A document comparison showing the differences between the Voice Domain and Apple proposed protective orders is available at Docket #45-7.

disadvantage to the Producing Party, such as trade secrets, non-public technical information such as product development information, engineering documents and testing documents, non-public sensitive financial data such as pricing information, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, employee information, other non-public information of similar competitive and business sensitivity and information subject to an obligation of confidentiality to a third person or Court.

(b)   Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL-ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)   The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by case law, on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff.   For purposes of section 9, Bruce Barker shall not be given access to Discovery Material designated as "CONFIDENTIAL-ATTORNEYS' EYES ONLY"[.]

(Docket #45-2 at ¶ 9).

Voice Domain's proposed protective order eliminates the AEO designation.   (Docket #45-7).   Hence, Barker would have access to all materials produced other than SOURCE CODE. Under Voice Domain's proposal, Barker would be allowed to see Apple's trade secrets; non-public technical information such as product development information, engineering, and testing documents; non-public sensitive financial data such as pricing information, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, employee information, and other non-public information of similar competitive and business sensitivity.[2] Voice Domain argues that the AEO provision will preclude Barker, and therefore, Voice Domain itself, from evaluating any non-public technical or financial information and thereby impair its ability to make sound litigation decisions.   (Docket #44 at 17-18).

---

[2] In its supplemental submission following the hearing, Apple stated that it would be amenable to allowing Barker to review the following types of financial documents, which would likely be designated AEO, following the commencement of fact discovery:  Apple's summary financial reports for relevant time periods that show the price and number of units sold of the accused devices; licenses potentially relevant to the determination of a reasonable royalty in this case, if any; and agreements potentially relevant to valuation of the voice-recognition software at issue in this litigation.  (Docket #61 at 2).  The Court expects that the proposed protective order submitted pursuant to this Order shall include these terms.

Voice Domain's removal of the AEO provision also eliminates previously agreed-to protections.  With the elimination of the AEO designation, the only available designations are either CONFIDENTIAL or SOURCE CODE.  (Docket #45-7 at ¶¶ 8-10).  Thus, all the information that would have been labeled AEO, i.e., highly confidential information that is not SOURCE CODE, can only be designated as CONFIDENTIAL.  Apple and Voice Domain had previously agreed that material designated CONFIDENTIAL could be disclosed to mock jurors, but material designated as AEO or SOURCE CODE could not.  (Docket #45-2 at ¶¶ 8-10). Eliminating the AEO provision permits the parties to allow mock jurors to access highly confidential information.

   1.  Risk of Inadvertent Disclosure

   In United States Steel Corp. v. United States, the Federal Circuit clarified that the relevant determination for denial of access under a protective order is "[w]hether an unacceptable opportunity for inadvertent disclosures exists."  U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984).  This determination turns on the extent to which the person to whom the information is to be disclosed is involved in "competitive decisionmaking" with the client.  Id.  The Federal Circuit in U.S. Steel gave the following explanation of "competitive decisionmaking:"

> The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access.  The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

Id. at 1468 n.3 (emphasis added).

   Apple asserts that Barker is a competitive decisionmaker as Barker is synonymous with Voice Domain.  (Docket #45 at 14).  Voice Domain, representing that it holds only four patents

6

directed to voice data technology and does not manufacture electronics, argues that it is not a competitor with Apple and, therefore, there is no particularized need for protection.  (Docket #44 at 12; Docket #46 at 5).  Apple asserts that this argument is unsupported by fact and law and disregards the fact that, as a patent inventor and prosecutor, access to highly confidential Apple documents creates an unacceptable risk to Apple's business.  (Docket #45 at 14).

"[C]ourts have not limited the category of competitive decision makers to only those people who work for entities that make or sell competing products."  Microsoft Corp. v. Common Sci. & Indus. Research Org., No. 6:06 CV 549, 2009 U.S. Dist. LEXIS 13675, at *18-19 (E.D. Tex. Mar. 14, 2008) (holding that, while parties were not traditional competitors in the market place, they were adversarial as one party produced products that the other claimed practiced its patent); see Apeldyn Corp. v. AU Optronics Corp., No. 08-568-SLR, 2012 U.S. Dist. LEXIS 85692, at *24 (D. Del. June 13, 2012) (stating that the fact that the plaintiff did not currently compete with defendant did not eliminate risk of inadvertent disclosure); St Sales Tech Holdings, LLC v. Daimler Chrysler Co., No. 6:07-CV-346, 2008 U.S. Dist. LEXIS 107096, at *23 (E.D. Tex. Mar. 14, 2008) ("Moreover, it is somewhat disingenuous to argue Sales Tech is not Defendants' competitor simply because Sales Tech is in the business of acquiring and enforcing patents, while Defendants manufacture and design automobiles.  Plaintiff and Defendants all seek to utilize, in one manner or another, intellectual property as part of a business model for pecuniary gain."); Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc., 236 F.R.D. 146, 149 (W.D.N.Y. 2006) ("I note that TLI has not cited, nor has this Court found, any cases to suggest that the disclosure of proprietary information to an opposing patent inventor would be appropriate merely because the parties were not currently direct competitors, particularly where, as here, the inventor licenses the patent to a direct competitor.").  Even where

parties are not "traditional competitors in the market place," an individual may still be deemed a competitive decisionmaker where the parties are in an "adversarial" posture and the individual receiving the highly confidential information would be "especially situated to take positions that are directly harmful and antagonistic to [the defendant]."  Microsoft, 2009 U.S. Dist. LEXIS 13675, at *19-20.

Apple asserts that Barker is "especially situated to take positions that are directly harmful and antagonistic" to Apple because of the many hats he wears at Voice Domain.  (Docket #45 at 15).  Apple argues that Barker's role in licensing and litigating Voice Domain's patents presents a high risk of inadvertent disclosure, stating that Apple's information could be used by Barker to aid Voice Domain in determining what kinds of patents to prosecute or acquire, which companies to sue in future litigation, and the price of licenses or litigation settlements.  (Id.). Courts have denied disclosure based on these concerns.  See Intel Corp. v. VIA Techs., Inc., 198 F.R.D. 525, 530 (N.D. Cal. 2000) (denying access to protected information to in-house counsel where her "involvement in licensing through litigation constitutes competitive decisionmaking, because her advice and counsel necessarily affect licensing decisions"); Affymetrix, Inc. v. Illumina, Inc., Civil Action No. 05-901-JJF, 2005 U.S. Dist. LEXIS 15482, at *8 (D. Del. July 28, 2005) (holding that party's involvement with settling patent litigation and licensing crosses over into competitive-decision making and, therefore, party was appropriately barred from viewing confidential material under protective order).  Apple also states that there is a high risk of inadvertent disclosure because Barker has prosecuted multiple patents related to the accused technology, and continues to invent, prosecute, and obtain patents from the PTO even if he does not have any pending patents related to the accused technology in this case.  (Docket #44 at 16). Courts have recognized the risk of inadvertent use of confidential information if disclosed to

inventors, engineers, and scientists.  See Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd., No. 12-cv-11935-PBS, Docket #636 at 7-8 (D. Mass. July 8, 2014) (Boal, M.J.) ("Although the Court does not question [the inventor of the named patent and employee of plaintiff]'s intentions, it 'nonetheless question[s] his human ability during future years of research to separate the applications he has extrapolated from [defendants'] documents from those he develops from his own ideas) (quoting Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20, 22 (D. Del. 1998)); Tailored Lighting, 236 F.R.D. at 149 ("[T]his Court has no reason to question the integrity of plaintiff's president and patent inventor; nonetheless, it seems unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests.").

The Court finds that Barker is a competitive decisionmaker.  While Voice Domain and Apple may not make or sell competing products, Voice Domain alleges that Apple is producing products that practice its patent.  As the sole employee of Voice Domain, Barker is "especially situated" to take positions "directly harmful and antagonistic" to Apple.  While the Court has no cause to doubt Barker's integrity, it questions whether it is possible to avoid the subconscious use of Apple's confidential material in his future endeavors.  Hence, the Court finds that there is a real risk of inadvertent disclosure if Barker is permitted to access the AEO material.

2.  Balance of Harms

Although the Court has found that a risk of inadvertent disclosure exists, the Court must also balance that risk against the potential harm to the opposing party.  See In re Deutsche Bank Trust Co. Ams., 605 F.3d 1373, 1380 (Fed. Cir. 2010).  Voice Domain argues that it would suffer severe harm if the AEO provision is included in the protective order because it would

9

preclude Barker from evaluating any of the highly confidential materials in the case, and, because Barker is Voice Domain's sole employee, thereby prevent Voice Domain from making sound litigation decisions.  (Docket #44 at 17-18).  However, the Court finds that this hardship is mitigated by the fact that Voice Domain's counsel will have access to the AEO materials and can therefore competently advise their client.  See Vardon Golf Co., Inc. v. BBMG Golf, Ltd., No. 91 C 0349, 1991 U.S. Dist. LEXIS 15283, at *4 (N.D. Ill. Oct. 24, 1991) (holding that the hardship on plaintiff due to plaintiff's sole owner, shareholder, and employee being unable to discover protected material is negligible because plaintiff's trial counsel would be permitted access to the protected material); see also EPL Holdings, LLC v. Apple Inc., 2013 U.S. Dist. LEXIS 71301, at *4 (N.D. Cal. May 20, 2013) ("Moreover, EPL brought this action against Apple; EPL's apparent lack of internal resources to effectively pursue this action does not mean that Apple's confidential information should be exposed to non-parties.").

Voice Domain also argues that the provision would impair Voice Domain's counsel's ability to consult with the inventor of the patent at issue and, thus, prevent them from preparing their case effectively.  (Docket #44 at 18).  This argument was made and rejected in Trustees of Boston University v. Everlight Electronics Co., Ltd.  Judge Boal stated that, while the court was persuaded that the patent inventor had specialized knowledge about the patented technology, the court was not persuaded that the plaintiff would be unable to effectively prosecute the case unless the patent inventor was able to access the confidential materials.  Trustees of Boston Univ., No. 12-cv-11935-PBS, Docket #636 at 8.  Judge Boal relied on the fact that the patent inventor would be able to access discovery including confidential material that had not been designated outside counsel only and that the plaintiff had failed to show that it would be unable to obtain the assistance it needed from a different expert.  Id.  Those same considerations are at

10

play here.  Barker is able to access material designated CONFIDENTIAL.  Voice Domain also has not shown why it could not engage an expert other than Barker to assist it in this litigation.

The Court finds that the potential harm to Voice Domain from precluding Barker from accessing materials designated AEO does not outweigh the risk of inadvertent disclosure of Apple's confidential material.  Thus, any proposed protective order submitted to this Court as a result of this Order shall contain an AEO provision.

B.      Patent Prosecution Bar

The parties have agreed that a prosecution bar is appropriate in this case for those who access material designated as SOURCE CODE.  (Docket #45 at 11).  Voice Domain has also agreed to bar Barker and counsel from prosecuting any new Voice Domain patent applications concerning the subject matter of this patent case.  (Docket #44 at 8).  The proposed confidentiality orders also contain an undisputed provision providing, "All Protected Material shall be used solely for this case or any related appellate proceeding and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function."  (Docket #45-7 at ¶ 6(a)).

Apple's proposed prosecution bar, as drafted on May 21, 2014 states:

Absent the written consent of the Producing Party, any person on behalf of either Party who receives one or more items designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY-SOURCE CODE" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" shall not be involved, directly or indirectly for the respective Party that they represent in the case, in any of the following activities: (i) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of software or hardware for data entry, voice recording, dictation, processing voice commands, converting speech to text, natural language processing, and/or interacting with a device (generally or as described in any patent in suit), before any foreign or

domestic agency, including the United States Patent and Trademark Office. <u>These prohibitions are not intended to and shall not preclude counsel from participating in proceedings on behalf of a Party challenging the validity of any patent,</u> but are intended, inter alia, to preclude counsel from participating directly or indirectly in drafting or amending claims during reexamination, *inter partes* review, covered business method review, or reissue proceedings on behalf of a patentee. These prohibitions shall begin when access to "CONFIDENTIAL-ATTTORNEY'S EYES ONLY-SOURCE CODE" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY" materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

(Docket #45-1 at ¶ 8) (emphasis in original).

The dispute over the prosecution bar centers on two issues:  (1) whether the prosecution bar should apply to those who access material designated as AEO, and (2) whether the prosecution bar should apply to post-grant proceedings (i.e. reexamination, *inter partes* review, covered business method review, or reissue proceedings).  (Docket #45 at 11).

1. AEO Materials

While Voice Domain has agreed to a prosecution bar applying to SOURCE CODE, Apple argues that a broader prosecution bar applying to AEO material is needed as, per the scheduling order, it is required to produce its documents sufficient to show the operation of the accused products.  (Docket #45 at 20).  Apple states that, often, the technical details of how a product works are disclosed in documents like schematics, data sheets, specifications, flow charts, artwork, or formulas rather than or in addition to source code.  (<u>Id.</u>).  The preceding materials would fall under the AEO designation but not the SOURCE CODE designation.  Apple seeks to apply the prosecution bar to individuals accessing the AEO material.

In <u>In re Deutsche Bank</u>, the Federal Circuit recognized that an attorney with access to its adversary's confidential information may be barred from representing clients in certain matters before the PTO due to the high risk of inadvertent disclosure and misuse of that information.  <u>In</u>

12

re Deutsche Bank, 605 F.3d at 1380-81.  For the same reasons that the Court found that the AEO provision should be included in any submitted protection order, the Court finds that material designated AEO is entitled to protection under the prosecution bar.

     2. Post-Grant Proceedings

     Under the Patent Act, patent owners and third parties may initiate a "reexamination" proceeding to confirm or challenge the validity of a previously issued patent.  See 35 U.S.C. §§ 302-307.  Once a reexamination request is made, the Director of the PTO determines whether the reexamination request raises a "substantial new question of patentability."  35 U.S.C. § 303.  If not, the reexamination request is denied.  Id.  If it does, the Director orders a reexamination and gives both the owner and the requestor the opportunity to weigh in on the matter.  35 U.S.C. § 304.  The reexamination goes forward "according to the procedures established for initial examination" – that is, the process undertaken by the PTO to examine a new patent application. 35 U.S.C. § 305.  Amendments are allowed on reexamination, though they "must not enlarge the scope of a claim nor introduce new matter.  Amended or new claims which broaden or enlarge the scope of a claim of the patent should be rejected under 35 U.S.C. 314(a)."  Ameranth, Inc. v. Pizza Hut, Inc., No. 3:11-cv-01810, 2012 WL 528248, at *6 (S.D. Cal. Feb. 17, 2012) (quoting Manual of Patent Examining Procedure § 2666.01).

     Until recently, courts generally did not include reexamination proceedings within the scope of a prosecution bar.  See id. ("a review of cases directly discussing a prosecution bar applied to reexamination finds near unanimous support against extending the [prosecution] bar to cover reexamination").  In EveryScape, Inc. v. Adobe Systems, Inc., Judge Collings was faced with the parties' competing proposed protective orders, the dispute between the two centering on whether counsel should be barred from participating in reexamination proceedings.  EveryScape,

13

Inc. v. Adobe Sys. Inc., No. 1:10-cv-11597-RGS, Electronic Order (D. Mass. Aug. 12, 2011) ("Specifically, plaintiff proposes that the prosecution bar not apply to representation of a patentee in reexaminations of the patent-in-suit initiated by [] litigants accused of infringing that patent.").  Judge Collings, citing Crystal Image Technology, Inc. v. Mitsubishi Electric Corp., stated that he would follow those decisions in which courts have declined to extend the prosecution bar to reexamination proceedings in such circumstances.  Id.

> The Court in Crystal Image stated:
>
> The Patent Act expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent.  Thus, an important limitation on reexamination is that no proposed amended or new claim enlarging the scope of a claim of the patent will be permitted.  Claims added or amended in a reexamination proceeding will necessarily be narrower and, therefore, no device can infringe the narrower claims emerging from reexamination that would not have infringed the original claims.

Crystal Image Technology, Inc. v. Mitsubishi Elec. Corp., No. 08-307, 2009 U.S. Dist. LEXIS 32972, at *5 (W.D. Pa. April 17, 2009) (quoting Pall Corp. v. Entegris, Inc., 655 F. Supp. 2d 169, 173 (E.D.N.Y. 2008)) (alterations omitted).  "The above restriction 'both underscores the distinction between initial patent prosecution and reexamination, and effectively mitigates the potential misuse of PTO procedures to gain a collateral business or litigation advantage, thereby rendering a prosecution bar in the reexamination context largely unnecessary."  Id. (quoting Pall Corp., 655 F. Supp. 2d at 173) (alterations omitted); see Kenexa Brassring Inc. v. Taleo Corp., No. 07-521-SLR, 2009 WL 393782, at *2 (D. Del. Feb. 18, 2009) ("Because reexamination involves only the patent and the prior art, defendant's confidential information is 'basically irrelevant to the reexamination.'").

"However, a newer line of cases recognizes that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve

its litigation position against alleged infringers." Telebuyer, LLC v. Amazon.com, Inc., No. 13-cv-1677, Docket #118 at 10 (W.D. Wash. July 7, 2014) (available at Docket #45-11) (citing Shared Memory Graphics, LLC v. Apple, Inc., 2010 U.S. Dist. LEXIS 125184, at *11 (N.D. Cal. Nov. 12, 2010) ("Claims may still be restructured in reexamination, and, in a given case, a patent owner may well choose to restructure claims in a manner informed by the alleged infringer's confidential information gleaned from litigation."); Grobler v. Apple Inc., 2013 U.S. Dist. LEXIS 65048, at *5-6 (N.D. Cal. May 7, 2013) (prohibiting counsel from drafting or amending claims in reexamination); EPL Holdings, 2013 U.S. Dist. LEXIS 71301, at *9-10 (holding that parties' counsel may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims)).  "These decisions recognize that drafting, amending, restructuring, or otherwise participating in reexamination proceedings may constitute 'competitive decision-making' as contemplated by the Federal Circuit in Deutsche Bank." Id. at 11.  "Thus, where the need to protect confidential information outweighs the burden on the receiving party, a court may prohibit counsel from participating or consulting on reexamination proceedings, or may limit that participation." Id.  The Telebuyer court found that the risk to Amazon's confidential information outweighed the burdens imposed on Telebuyer due to the breadth and volume of the material requested by Telebuyer and the possibility of counsel using such information in the PTO proceeding without technically "drafting" or "amending" a claim. Id. at 11.  The court noted that the burden on plaintiff – the need to retain other outside counsel – was not too cumbersome as the court had no reason to doubt that plaintiff could secure different counsel for future patent action during the time of the prosecution bar. Id. at 8.  The court stated its decision was consistent with the Model Stipulated Protective Order for the Northern District of California. Id. at 11; see N.D. Cal. Patent Local

15

Rule 2-2 Interim Model Protective Order, *available at* http://www.cand.uscourts.gov/model-protective-orders (updated August 20, 2014).   However, the court noted that there was one particular circumstance where the burden on the receiving party may outweigh the risks.  Id.  The court stated that "[s]hould the producing party initiate the reexamination proceeding, the PTO proceeding might effectively be 'part and parcel of the litigation at issue;'" thus the prosecution bar would require the receiving party to retain separate counsel for what is essentially the same dispute, "another 'front' in the litigation."  Id. at 11-12.  Therefore, the court stated that, should the producing party bring reexamination proceedings, counsel for the receiving party would be permitted to participate in those proceedings upon a grant of leave from the court.  Id. at 12; see also Shared Memory Graphics, 2010 U.S. Dist. LEXIS 125184, at *14-15 (holding that patentee counsel should not be banned from reexamination proceedings so long as (1) the proceedings are initiated by the opposing party, and (2) counsel expressly agrees that in the reexamination it will not rely on any confidential information supplied by the opposing party).

Apple has proposed allowing litigation counsel in this case to participate in a post-grant proceeding, but counsel's ability to draft or amend claims would be restricted.  (Docket #45 at 22).  At the hearing and in its supplemental memorandum, Apple also stated that it would be amenable to counsel from Fisch Sigler LLP, the firm currently representing Voice Domain, who have not accessed or reviewed Apple's documents and other information designated as AEO or SOURCE CODE to represent Voice Domain in a post-grant proceeding before the PTO for all purposes, including drafting and amending claims.  (Docket #61 at 1-2).  Apple conditioned its agreement to such a proposal on the condition that Voice Domain establish an appropriate ethical wall, and that materials designated AEO or SOURCE CODE not be shared or communicated in any way between any member of the Fisch Sigler litigation team and any member of the Fisch

16

Sigler post-grant team.  (Id. at 2).  Apple described the ethical wall as prohibiting any member of the Fisch Sigler litigation team from drafting or amending claims in a post-grant proceeding, but stated that it would not prohibit the Fisch Sigler litigation team from communicating with the post-grant team regarding prior art to the patent-in-suit, including prior art already furnished to Voice Domain by Apple along with its invalidity contentions.  (Id.).

The Court finds the more recent line of cases recognizing "that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve its litigation position against alleged infringers" persuasive.  See Telebuyer, No. 13-cv-1677, Docket #118 at 10.  The Court recognizes the risk to Apple if parties with access to the AEO or SOURCE CODE materials are allowed to draft or amend claims during reexamination proceedings on behalf of Voice Domain.  The Court believes that Apple's proposed prosecution bar and the ethical wall proposed in its supplemental memorandum address this real concern while placing the least burden possible on Voice Domain.  However, the Court requires that the parties add one caveat to this provision in any proposed protective order.  If Apple should bring reexamination proceedings, counsel for Voice Domain would be permitted to participate in those proceedings upon a grant of leave from the court.  Such a provision addresses Voice Domain's concerns about gamesmanship and is also consistent with the case law relied upon by Apple.  See Telebuyer, No. 13-cv-1677, Docket #118 at 12; Shared Memory Graphics, 2010 U.S. Dist. LEXIS 125184, at *14-15.

C.    Expert Discovery

Apple's proposed protective order contains a provision describing what materials are and are not discoverable from experts in this case.  (Docket #45-2 at ¶ 20).  Voice Domain's proposed protective order does not contain a similar provision.  (Docket #45-7 at ¶ 20).  Apple's

proposal states that testifying experts are not subject to discovery with respect to any drafts of their reports, notes, or outlines for draft reports.  (Docket #45-2 at ¶ 20).  Apple's proposal also limits discovery of materials provided to testifying experts to "those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case."  (Docket #45-2 at ¶ 20).  Voice Domain argues that this provision is not necessary and may lead to "gotcha"-type difficulties later in discovery to the extent the protective order varies with the actual requirements of Fed. R. Civ. P. 26.  (Docket #44 at 20).

Pursuant to Fed. R. Civ. P. 26(a)(2), an expert's written report must contain "the facts or data <u>considered</u> by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B)(ii) (emphasis added).  Apple's proposal differs from Rule 26(c) in that it only requires the parties to turn over materials "actually relied upon by the testifying expert."  This is a distinction with a difference. <u>See</u> <u>Allstate Ins. Co. v. Electrolux Home Prods., Inc.</u>, 840 F. Supp. 2d 1072, 1080 (N.D. Ill. 2012) ("The term 'considered' invokes a broader spectrum of thought than the phrase 'relied upon' which requires dependence on the information.") (quotation omitted).  Apple asserts that its proposal will forestall confusion over what will be disclosed as there has been tremendous variation in the interpretation of Rule 26 and prevent unnecessary motion practice.  (Docket #45 at 22-23).

The Court finds that Apple has not justified the need for the additional protections in expert discovery beyond those that Rule 26(a)(2) provides.  While it is true that Rule 26 is often the subject of litigation, Apple, who bears the burden here, has not provided any specific assertions of potential harm that it will face as to this issue beyond those that every party with an expert faces in litigation.  Thus, any proposed protective order submitted to this Court shall not

contain a provision, unless agreed to by both parties, that restricts expert discovery beyond the bounds of Rule 26(a)(2).

IV.    CONCLUSION

For the foregoing reasons, the competing Motions for Protective Order (Dockets #44, 45) are both DENIED.  The Parties are hereby ORDERED to submit a Proposed Protective Order consistent with the reasoning and dictates of this Order by **October 22, 2014**.

.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

EXHIBIT F

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    CATCH A WAVE TECHNOLOGIES,                    No. C 12-05791 WHA
      INC.,

11
                         Plaintiff,

12
          v.                                        **ORDER RE PATENT**
                                                    **ACQUISITION BAR**
13
      SIRIUS XM RADIO, INC.,

14
                         Defendant.

15    _____/

16

17        The parties to this patent suit dispute whether plaintiff's counsel from Freitas Tseng &

18    Kaufman, LLP should be subject to a "patent acquisition bar."  Defendant Sirius XM Radio, Inc.

19    argues that the Freitas attorneys who gain access to Sirius' confidential technical information

20    should be barred from advising any clients in the "acquisition of patents involving satellite radio

21    signal processing for the purpose of asserting them against" Sirius for two years after the

22    conclusion of the litigation, including any appeals (Br. 1).  Freitas objects.  This order agrees that

23    a patent acquisition bar is warranted.

24        In modern litigation, the disclosure of confidential, "crown jewel" technology to

25    opposing counsel is a burden to which parties must submit.  It is not, however, without

26    consequences.  Consistent with widespread practice, the model protective order in this district

27    contains a straightforward clause barring use of disclosed confidential information for non-

28    litigation purposes.  As Freitas concedes, this clause already includes *using* such confidential

      information to advise third parties on the acquisition of patents to assert against the disclosing

United States District Court
For the Northern District of California

party.  The patent acquisition bar requested by Sirius adds an additional layer of protection by prohibiting not just disclosure and use, but also advising.  It thus prevents attorneys from — inadvertently or otherwise — relying on the confidential information when they advise other parties anticipating litigation against Sirius.  This order concludes that such a *quid pro quo* is reasonable.

Freitas argues that a patent acquisition bar would be redundant and unnecessary given the bar on using confidential information.  Without impugning the integrity of plaintiff's counsel, an attorney who has learned the intricacies of Sirius' secret technologies will be hard-pressed not to rely on that knowledge in a subsequent suit against Sirius.  The two-year patent acquisition bar allows time for the limitations of human memory to run their course or for the information to become largely stale.

Freitas objects that the phrase "satellite radio signal processing" is too vague.  This order disagrees.  For now, the parties' requests to enter one of the proposed versions of the protective order are **DENIED**.  The parties shall meet-and-confer and adopt a mutually agreeable definition of the technological scope of the proposed patent acquisition bar.  Both sides shall negotiate promptly and in good faith.

**IT IS SO ORDERED.**

Dated:   August 5, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) |
| Plaintiffs, | ) )  C.A. No. 10-1065-LPS |
| v. | )  **(CONSOLIDATED)** ) |
| ALTERA CORPORATION, MICROSEMI CORPORATION, LATTICE SEMICONDUCTOR CORPORATION, and XILINX, INC., | ) ) ) ) ) |
| Defendants. | ) ) ) |

## [PROPOSED] STIPULATED PROTECTIVE ORDER

The Parties Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV"), Altera Corporation ("Altera"), Microsemi Corporation ("Microsemi"), Lattice Semiconductor Corporation ("Lattice"), and Xilinx, Inc. ("Xilinx") (collectively, "Defendants"), recognize that information and materials sought, produced, and/or exhibited in this matter by the Parties or produced by third parties may contain confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this action would be warranted.

To expedite the flow of discovery material, to facilitate prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the Parties are entitled to keep confidential, to ensure only materials entitled such confidentiality are subject to confidential treatment, and to ensure the Parties are permitted reasonably necessary use of such materials in preparation for and during trial, the Parties hereby stipulate to the following

1

protective order and pursuant to Federal Rule of Civil Procedure 26(c), **IT IS HEREBY ORDERED THAT**:

## 1. PURPOSES AND LIMITATIONS

1.1     This Protective Order is intended to protect confidential, proprietary, and/or private information for which special protection from public disclosure is permitted that is likely to be produced or disclosed in this action. The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled to confidential treatment under applicable legal principles.

1.2     To the extent that any one of Defendants in this litigation provides Protected Material under the terms of this Protective Order to Plaintiffs, Plaintiffs shall not share that material with the other Defendants in this litigation, absent a further Court order or express written permission (including through email) from the producing Defendant or its counsel. This Order does not confer any right to any one Defendant to access the Protected Material of any other Defendant.

## 2. DEFINITIONS

2.1     "CONFIDENTIAL" Information or Items: Confidential information (regardless of how generated, stored, or maintained) or tangible things that the Designating Party (i) would not normally reveal to third parties except in confidence, or has undertaken with others to maintain in confidence, (ii) believes in good faith is significantly sensitive, or (iii) protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy.

2

2.2     Counsel (without qualifier):   Outside Counsel or In-House Counsel and all support staff thereof.

2.3     Designating Party: A Party or non-party that designates information or items that it produces in Disclosure or Discovery Material as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL - SOURCE CODE."

2.4     Disclosure or Discovery Material:   All items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, generated, or otherwise provided in this action by the Parties or by non-parties.

2.5     Expert:  A person who has been retained by a Party or its Counsel to serve as an expert witness or as a consulting expert in this action and who is not a current officer, director, or employee of a Party or of a competitor of a Party and who, at the time of retention, does not anticipate becoming an officer, director or employee of a Party or of a competitor of a Party. Nothing in this order purports to change the requirements for offering testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order.

2.6     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: "CONFIDENTIAL" Information (as defined in 2.1 above) whose disclosure to another Party or non-party would create a substantial risk of harm to the competitive position of the Producing Party.

3

2.7    "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items:

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items

representing

[Plaintiffs' Proposal: computer code and associated comments and revision histories, formulas, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means. For the avoidance of doubt, "HIGHLY CONFIDENTIAL – SOURCE CODE" information does not include specifications, text documents, and other materials that are maintained and/or can be generated by means other than through an electronic design database.]

[Defendants' Proposal: computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.]



2.8    In-House Counsel: Attorneys who are employees of a Party, or attorneys who are independent contractors of a Party and provide legal advice on an exclusive basis to that Party.

2.9    Outside Counsel: Attorneys who are not employees of a Party but who are retained to represent or advise a Party in this action.

2.10   Party: Any Party to this action, including all of its officers, directors, employees, consultants, retained experts, and all support staff thereof.

2.11   Producing Party: A Party or non-party that discloses or produces Disclosure or Discovery Material in this action.

2.12   Professional Vendors: Persons or entities that provide litigation support services (*e.g.*, photocopying; videotaping; translating; electronically stored information (ESI) consulting or document management; preparing exhibits or demonstrations; document management; jury

4

consulting; mock trial coordination) and their employees and subcontractors (including, but not limited to, mock jurors).

2.13 Protected Material: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL - SOURCE CODE" as provided for in this Order.

2.14 Receiving Party: A Party that receives Disclosure or Discovery Material from a Producing Party in this action.

## 3. SCOPE

3.1 The protections conferred by this Order cover not only Protected Material (as defined above), but also any information copied or extracted from Protected Material, as well as copies, excerpts, summaries, or compilations thereof, and testimony, conversations, or presentations by a Party or Counsel to or in court or in other settings that might reveal Protected Material.

## 4. DURATION

4.1 Even after the termination of this action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees or a court order directs otherwise.

4.2 This Order shall be binding upon the Parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, experts, consultants, and all other persons or organizations over which the Parties have control.

5

## 5.    DESIGNATING PROTECTED MATERIAL

5.1    <u>Manner and Timing of Designations:</u> Except as otherwise provided in this Order or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be so designated before the material is disclosed or produced.  Designation in conformity with this Order shall be made as follows:

(a)    <u>For information in documentary (including "electronically stored information") form</u> (apart from transcripts of depositions or other pretrial or trial proceedings) the Designating Party shall affix the legend "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL - SOURCE CODE" conspicuously on each page that contains Protected Material.

A Party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied or produced.  Before and during the inspection, all material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order and, before producing the specified documents, the Producing Party must affix the appropriate legend to each page that contains Protected Material.

(b)    <u>For testimony given in deposition or in other pretrial or trial proceedings</u> the Designating Party shall specify any portions of the testimony that it wishes to designate no later than 10 business days after the final transcript of the deposition or other proceeding has been received.  For deposition transcripts, the Party or non-party may identify the entirety of a transcript as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY", or "HIGHLY CONFIDENTIAL - SOURCE CODE" but all deposition transcripts not designated during the deposition will nonetheless be treated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the time within which it may be appropriately designated as provided for herein has passed. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties." Counsel for any Designating Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

(c)   For information produced in some form other than documentary, and for any other tangible items, the Designating Party shall affix, in a prominent place on the exterior of the medium, container or containers in which the information or item is stored, the appropriate legend.

5.2     Inadvertent Failure to Designate Properly:   An inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  Upon discovery of an inadvertent failure to designate, a Producing Party may notify the Receiving Party in writing that the material is to be designated.  Upon receipt of such notice, the Receiving Party must make reasonable efforts to assure that the material is thereafter treated in accordance with the provisions of this Order.  The Designating Party shall provide substitute copies of documents bearing the confidentiality designation.  Upon receiving substitute copies, the Receiving Parties shall return or securely destroy, at the Designating Party's option, all material that was not designated properly.

## 6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1     Timing of Challenges:   A Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer:   A Party that elects to initiate a challenge to a Designating Party's confidentiality designation must do so in good faith and must begin the process by identifying, in writing, the documents or information that the challenging Party contends should be differently designated, and the basis for its belief that the confidentiality designation is improper.  The Designating Party shall, within seven (7) calendar days after receiving such written notice, advise the challenging party, in writing, of the basis for its designation or re-designation.  Within seven (7) calendar days thereafter, the parties shall meet and confer directly in good faith to resolve the matter.

6.3     Judicial Intervention:   A Party that elects to challenge a confidentiality designation after considering the justification offered by the Designating Party (as described in

8

the preceding section) may, within seven (7) days of the parties' meet-and-confer, seek the Court's assistance in resolving the dispute in accordance with the Court's discovery dispute procedures. The burden shall be on the Designating Party to justify its asserted confidentiality designation.

## 7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles: A Receiving Party may use Protected Material that is disclosed or produced by another Party or non-party in connection with this action only for prosecuting defending, or attempting to settle this action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When this action has been terminated, a Receiving Party must comply with the provisions of Section 10 (FINAL DISPOSITION), below.

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures access to the Protected Material is limited to the persons authorized under this Order.

7.2    Procedures for Disclosure and Review of Material Designated "HIGHLY CONFIDENTIAL - SOURCE CODE."    Information or Items designated "HIGHLY CONFIDENTIAL - SOURCE CODE" (as defined in Section 2.7) will be made available for review at the following locations: (1) For Altera, Wilmer Hale, 950 Page Mill Road, Palo Alto, CA 94304, or at any location mutually agreed to by Plaintiffs and Altera; (2) For Xilinx, Jones Day, 1755 Embarcadero Road, Palo Alto, CA 94303, or at any location mutually agreed to by Plaintiffs and Xilinx; (3) For Lattice, Lattice Semiconductor Corporation, 2660 Zanker Road, San Jose, California 95134, or at any location mutually agreed to by Plaintiffs and Lattice; and (4) For MicroSemi, O'Melveny & Myers LLP, 2765 Sand Hill Road, Menlo Park, CA 94025, or

9

at any location mutually agreed to by Plaintiffs and Microsemi. The following conditions shall govern the production, review, and use of Information or Items designated "HIGHLY CONFIDENTIAL - SOURCE CODE" ("SOURCE CODE") and shall displace all such procedures and conditions set forth in the Delaware Default Standard For Access to Source Code in their entirety:

      (a)     Upon reasonable notice by the Receiving Party of no less than three (3) business days, all Information or Items designated "HIGHLY CONFIDENTIAL - SOURCE CODE" will be made available for review between 8:00 am and 6:00 pm, and any other time that is reasonable under the circumstances, by the Producing Party to the Receiving Party's outside counsel and/or Experts in a secured room on a secured computer at the following locations: (1) For Altera, Wilmer Hale, 950 Page Mill Road, Palo Alto, CA 94304, or at any location mutually agreed to by Plaintiffs and Altera; (2) For Xilinx, Jones Day, 1755 Embarcadero Road, Palo Alto, CA 94303, or at any location mutually agreed to by Plaintiffs and Xilinx; (3) For Lattice, Lattice Semiconductor Corporation, 2660 Zanker Road, San Jose, California 95134, or at any location mutually agreed to by Plaintiffs and Lattice; and (4) For MicroSemi, O'Melveny & Myers LLP, 2765 Sand Hill Road, Menlo Park, CA 94025, or at any location mutually agreed to by Plaintiffs and Microsemi or alternatively, via a remotely accessible secured computer, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any information outside or away from the computer on which the information is provided for inspection (the "Computer"). To the extent review of SOURCE CODE information is reasonably necessary for trial, the Parties shall negotiate in good faith, during the pre-trial phase of the case, the location of and conditions for access and review of SOURCE CODE information.

The Producing Party shall install reasonable tools or programs on the Computer to allow the Receiving Party to review and search the SOURCE CODE information if such tools exist and are presently used in the ordinary course of the Producing Party's business.    If the Receiving Party requires additional program(s) or review tool(s) or any particular type of program or review tool in addition to the reasonable tools or programs provided by the Producing Party, the Requesting Party shall provide (at the Receiving Party's cost) a licensed copy of the additional program(s) or review tool(s) to the Producing Party in reasonable advance of the inspection.

(b)      The Receiving Party's outside counsel and/or Experts shall be entitled to take notes relating to the SOURCE CODE information, but may not copy the SOURCE CODE information into the notes. Such notes shall be subject to the provisions of section (g) below. No copies of all or any portion of the SOURCE CODE information may leave the room in which the information is inspected unless otherwise provided herein.  Furthermore, no other written or electronic record of the SOURCE CODE information is permitted except as otherwise provided herein.

(c)      The Producing Party shall make available a color laser printer with commercially reasonable printing speeds for on-site printing during inspection of the SOURCE CODE information or in the alternative at the Producing Party's discretion, provide a mechanism by which the Receiving Party may designate certain portions of the information for printing by the Producing Party. The Receiving Party may print limited portions (or designate portions for printing by the Producing Party) of the SOURCE CODE information only when necessary to prepare any filing with the Court or to serve any pleadings or other papers on any other Party (including a testifying expert's expert report). The Receiving Party shall print or designate for

11

printing only such portions as are reasonably necessary for the purposes for which any part of the

SOURCE CODE information is printed at the time, but shall not request paper copies for the

purpose of reviewing SOURCE CODE Information in the first instance. The Receiving Party

shall print or designate for printing only such portions as are reasonably necessary for the

purposes for which any part of the information is printed at the time, but shall not request paper

copies for the purpose of reviewing Information in the first instance.

[Plaintiffs' Proposal: The parties presumptively agree that the Receiving Party may not print more than 100 consecutive pages of SOURCE CODE information, and may not print more than 4,000 pages of SOURCE CODE information in aggregate per Defendant during the duration of the case, without prior written consent by the Producing Party, which will not be unreasonably withheld. Within a reasonable time after the Receiving Party has had an opportunity to conduct an initial inspection of SOURCE CODE information for each Defendant, the parties shall meet and confer to determine whether the presumptive 100 and 4,000 page limits are appropriate in light of the volume and nature of SOURCE CODE information produced.]

[Defendants' Proposal: In no event may the Receiving Party print more than 40 consecutive pages and no more than 2000 pages of information in aggregate per Defendant during the duration of the case without prior written consent by the Producing Party, which will not be unreasonably withheld.]



Upon printing any such portions of SOURCE CODE information, the printed pages shall

be collected by the Producing Party. The Producing Party shall Bates number, copy, and label

"HIGHLY CONFIDENTIAL – SOURCE CODE" any pages printed or designated for printing

by the Receiving Party. Within five (5) business days, the Producing Party shall either (i) send

one copy set of such pages to the Receiving Party, for next day business delivery, or (ii) inform

the Receiving Party that it objects that the printed portions are excessive and/or not done for a

permitted purpose. If, after meeting and conferring, the Producing Party and the Receiving Party

cannot resolve the objection, either party shall be entitled to seek Court intervention to resolve the dispute. The burden shall be on the Producing Party to demonstrate that such printed portions are more than reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.

(d)     A list of names of persons who will view the SOURCE CODE information will be provided to the Producing Party in conjunction with any written (including email) notice requesting inspection, and in no event later than four (4) days in advance of such inspection. The Receiving Party in cooperation with the Producing Party shall maintain a daily log of the names of persons who enter the locked room to view the SOURCE CODE information and when they enter and depart. The Producing Party shall be entitled to have a person observe the activities of the Receiving Party's representatives during any such review, but only to ensure that such activities are permitted under this Order, and to receive a copy of the log. The Producing Party shall not, however, be allowed to monitor the conduct of the Receiving Party in such a manner as to obtain information that would otherwise be protected from disclosure by the Receiving Party's claim of attorney-client privilege, the work product immunity, or any other privilege, doctrine, right, or immunity.

(e)     Unless otherwise agreed in advance by the Parties in writing, following each inspection, the Receiving Party's outside counsel and/or Experts shall remove all notes, documents, and all other materials from the review room. The Producing Party shall not be responsible for any items left in the room following each inspection session.

(f)     Other than as provided in section (c) above, the Receiving Party shall not copy, remove, or otherwise transfer any information from the Computer including, without limitation, copying, removing, or transferring the information onto any other computers,

13

peripheral equipment, storage devices, or storage media. The Receiving Party will not transmit any "HIGHLY CONFIDENTIAL - SOURCE CODE" information in any way from the Producing Party's facilities or the offices of its Outside Counsel of record.

(g) The Outside Counsel and Experts (who have been approved to access information under Sections 7.4-7.6) for a Receiving Party shall maintain and store any paper copies of the SOURCE CODE information or notes related to such SOURCE CODE information (as referenced in section (b) above) at their offices in a manner that prevents duplication of or unauthorized access to the information or notes, including, without limitation, storing the SOURCE CODE information or notes in a locked room or cabinet at all times when those materials are not in use.

(h) The Receiving Party's Outside Counsel of record may make no more than five additional paper copies of any portions of the SOURCE CODE information printed pursuant to Section 7.2(c), not including copies attached to court filings, copies used at depositions, or copies made by Outside Counsel for the purposes of drafts, etc. The Receiving Party's Outside Counsel of record shall maintain a log of all copies of the information (received from a Producing Party) that are provided by the Receiving Party to any qualified person under Section 7.5(b)-(i). The log shall include the names of the recipients and reviewers of copies and locations where the copies are stored. Any paper copies of information shall be designated "HIGHLY CONFIDENTIAL - SOURCE CODE" and shall be stored or viewed only at (i) the offices of Outside Counsel for the Receiving Party, (ii) the offices of Experts who have been approved to access information under Section 7.6, (iii) the site where any deposition is taken, (iv) the Court, or (v) any intermediate location necessary to transport the information to a hearing, trial, or deposition. Any such paper copies shall be maintained at all times in a locked and secure

14

location. The Producing Party shall not unreasonably deny a Receiving Party's request to make (and log) additional copies, providing that the request is for good cause and for use that otherwise complies with this order. The Producing Party shall be entitled to a copy of the log upon request, but the Producing Party may only request such a log one time per month and at the conclusion of the litigation. If the Producing Party believes in good faith that there has been access to HIGHLY CONFIDENTIAL – SOURCE CODE information not in compliance with this Order, the Parties shall meet and confer to address and resolve the concern. If, after meeting and conferring the Parties cannot resolve the concern, the Producing Party shall be entitled to seek a Court resolution of whether there has been access to HIGHLY CONFIDENTIAL – SOURCE CODE information not in compliance with this Order. The burden shall be on the Producing Party to demonstrate that there has been access to HIGHLY CONFIDENTIAL – SOURCE CODE information not in compliance with this Order.

(i) The Receiving Party may include excerpts of information in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts of these documents ("SOURCE CODE"). The Receiving Party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the information is used. To the extent portions of information are quoted from SOURCE CODE, either (i) the entire document will be stamped RESTRICTED, or (ii) those pages containing quoted information will be separately bound, and stamped as RESTRICTED. All SOURCE CODE shall be filed under seal. Copies of SOURCE CODE information that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

15

(j)     All paper copies of SOURCE CODE shall be securely destroyed if they are no longer necessary in the litigation (e.g., extra copies at the conclusion of a deposition).

(k)     The Receiving Party may only create an electronic copy or image (e.g., a scan of the information to a PDF, or a photograph of a document) of selected portions of the SOURCE CODE information and only when reasonably necessary to accomplish any filing with the Court or to serve any pleadings or other papers on any other Party (including expert reports). Images or copies of information shall not be included in correspondence between the Parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein.

7.3     Disclosure of "CONFIDENTIAL" Information or Items:     Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)     The Receiving Party's Outside Counsel of record in this action, as well as employees of said Outside Counsel to whom disclosure is reasonably necessary to conduct this action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees of Outside Counsel to abide by the terms and conditions of the Order and will appropriately disclose these terms and conditions to all employees who will have access to information pursuant to the Order);

(b)     The officers, directors, employees, or consultants, whether full or part time (including In-House Counsel) of the Receiving Party to whom disclosure is reasonably necessary to conduct this action, who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (attached hereto as Exhibit A) and provided an executed copy to all Parties prior to receiving Protected Material, and for which no unresolved objections to such

16

disclosure exist after compliance with a procedure conforming to the requirements set out in Section 7.6 below;

(c)   Experts (as defined in Section 2.5, above) of the Receiving Party to whom disclosure is reasonably necessary to conduct this action and who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A) and for which no unresolved objections to such disclosure exist after compliance with the requirements set out in Section 7.6 below. Without the express prior written consent of the Defendant that produced the Protected Material, no expert or consultant retained by a Defendant in this matter shall have access to "CONFIDENTIAL" material produced by another Defendant in this matter.

(d)   The Court and its personnel;

(e)   Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff, who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A);

(f)   Court reporters and videographers employed in connection with this case;

(g)   Professional Vendors to whom disclosure is reasonably necessary to conduct this action and a representative of which has signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A);

(h)   Persons who appear on the face of the Protected Material as an author, addressee, or recipient of the document or have prior knowledge of the Protected Material as established through testimony; and

(i)   During deposition and/or at trial, current employees of the Producing Party that produced the documents or information.

17

(j)    Any other person with the prior written consent of the Producing Party.

7.4    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a)    The Receiving Party's Outside Counsel of record in this action, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States,* 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, as well as employees of said Outside Counsel to whom disclosure is reasonably necessary to conduct this action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees of Outside Counsel to abide by the terms and conditions of the Order, and will make appropriate disclosure of these terms and conditions to all employees who will have access to information pursuant to the Order);

(b)    Experts (as defined in Section 2.5, above) of the Receiving Party to whom disclosure is reasonably necessary to conduct this action and who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A) and provided an executed copy to all Parties prior to receiving Protected Material and for which no unresolved objections to such disclosure exist after compliance with the requirements set out in Section 7.6 below. Without the express prior written consent of the Defendant that produced the Protected Material, no expert or consultant retained by a Defendant in this matter shall have access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material produced by another Defendant in this matter;

(c)    The Court and its personnel;

18

(d)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff, who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A);

(e)     Court reporters and videographers employed in connection with this case;

(f)     Professional Vendors to whom disclosure is reasonably necessary to conduct this action and a representative of which has signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A);

(g)     Persons who appear on the face of the Protected Material as an author, addressee, or recipient of the document or have prior knowledge of the Protected Material as established through testimony; and

(h)     During depositions, current employees of the Producing Party that produced the documents or information. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Information must be separately bound by the court reporters and may not be disclosed to anyone except as permitted under this Order.

(i)     Any other person with the prior written consent of the Producing Party.

7.5     Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – SOURCE CODE" in accordance with the provisions of Section 7.2 of this Order and only to:

(a)     The Receiving Party's Outside Counsel of record in this action, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, as well as employees of said Outside Counsel to whom disclosure is

19

reasonably necessary to conduct this action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees of Outside Counsel to abide by the terms and conditions of the Order, and will make appropriate disclosure of these terms and conditions to all employees who will have access to information pursuant to the Order);

(b)     Experts (as defined in Section 2.5, above) of the Receiving Party to whom disclosure is reasonably necessary to conduct this action and who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A) and provided an executed copy to all Parties prior to receiving Protected Material and for which no unresolved objections to such disclosure exist after compliance with the requirements set out in Section 7.6 below. Without the express prior written consent of the Defendant that produced the Protected Material, no expert or consultant retained by a Defendant in this matter shall have access to "HIGHLY CONFIDENTIAL – SOURCE CODE" material produced by another Defendant in this matter;

(c)     The Court and its personnel;

(d)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff, who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A);

(e)     Court reporters and videographers employed in connection with this case;

(f)     Professional Vendors to whom disclosure is reasonably necessary to conduct this action and a representative of which has signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A);

(g)     Persons who appear on the face of the Protected Material as an author, addressee, or recipient of the document or have prior knowledge of the Protected Material as established through testimony; and

(h)     During depositions, current employees of the Producing Party that produced the documents or information. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Information must be separately bound by the court reporters and may not be disclosed to anyone except as permitted under this Order.

(i)     Any other person with the prior written consent of the Producing Party.

7.6     Procedures for Approving Disclosure of Protected Material to Experts:

(a)     A Party that seeks to disclose to an Expert any information or item that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" first must notify, in writing (including via email), the Designating Party of its intent to make such a disclosure. The notification shall include a copy of the Expert's current *curriculum vitae* and must identify:

(i)     The full name of the Expert and the city and state of the Expert's primary residence;

(ii)     The Expert's current employer(s);

(iii)     Each person or entity from whom the Expert has received compensation for work in his/her area of expertise or to whom the expert has provided professional services in his/her area of expertise at any time during the preceding five (5) years;

(iv)     Any legal action (by name and number of the case, filing date, and court) in connection with which the Expert has provided any professional

21

services in his/her area of expertise during the preceding five (5) years; and

(v)     Any previous or current contractual relationship with any of the Parties.

The Party that seeks to make such disclosure to an expert of any information or item that has been designated Protected Material need not identify to the Designating Party said information or item to be disclosed.

(b)     A Party that provides the notice described in the preceding section may disclose the subject Protected Material to the identified Expert unless, within fourteen (14) days of receipt of the notice, the Party receives an objection to the disclosure, in writing (including via email), from the Designating Party. Any such objection must be for good cause and must set forth in detail the grounds on which it is based. In the absence of an objection at the end of the fourteen (14) day period, the Expert shall be deemed approved under this Protective Order.

(c)     A Party that receives a timely written objection as described in the preceding section must meet and confer with the Designating Party to try to resolve the matter by agreement within seven (7) days following the objection. Only if no agreement is reached after the meet and confer, either party may seek the Court's assistance in accordance with the Court's procedures for resolving discovery disputes within seven (7) days from the date of the meet and confer. If relief from the Court is not sought within that time, the objection shall be deemed withdrawn. If relief is sought, designated material shall not be disclosed to the Expert in question until the Court resolves the objection. In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure

22

would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to the specific designated Expert.

(d)     An initial failure to object to an Expert under this section shall not preclude the nonobjecting party from later objecting to continued access by that Expert for good cause.

## 8.     FILING PROTECTED MATERIAL

8.1     All Protected Material must be filed under seal in accordance with the provisions of the United States District Court for the District of Delaware's Revised Administrative Procedures Governing Filing and Service by Electronic Means.

## 9.     USE OF PROTECTED MATERIAL AT COURT HEARINGS OR PROCEEDINGS

9.1     The use of Protected Material at any Court hearing or proceeding shall be as directed by the Court.

9.2     In the event that any material designated as Protected Material is used in any Court hearing or proceeding, the Party proffering the Protected Material may request that the Court close the courtroom, but the decision of whether to do so rests with the judge presiding at the hearing or proceeding.

## 10.     FINAL DISPOSITION

10.1     Unless otherwise ordered or agreed in writing by the Producing Party, within thirty (30) days after the final termination of this action, including all appeals (or 30 days after the time to appeal has lapsed), each Receiving Party must destroy or return, at the Producing Party's request, all Protected Material to the Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, or any other form of reproducing or capturing any of the Protected Material.  The Receiving Party must submit a

written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the thirty (30)-day deadline.

10.2    Notwithstanding the preceding section, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence, or attorney work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION), above.  In addition, notwithstanding the preceding section, Counsel are entitled to retain any copies that exist on back up tapes or other media used for disaster recovery purposes, provided that such copies will not be accessed except upon notice to the Producing Party.

## 11.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

11.1    If a Receiving Party is served with a subpoena or an order issued in other action that would compel disclosure of any Protected Material, the Receiving Party must so notify the Designating Party, in writing immediately so that the Designating Party has an opportunity to object to the disclosure of Protected Material.  Such notification must include a copy of the subpoena or court order.

11.2    The Receiving Party also must immediately inform in writing the Party who caused the subpoena or order to issue in the other action that some or all the material covered by the subpoena or order is the subject of this Order.  In addition, the Receiving Party must deliver a copy of this Order promptly to the Party that caused the subpoena or order to issue in the other action.

11.3    The purpose of imposing this duty is to afford the Designating Party in this action an opportunity to try to protect its confidentiality interests in the court from which the subpoena

24

or order issued. The Designating Party shall bear the burdens and the expenses of seeking protection of its confidential material in that court.

11.4 Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

11.5 By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another Party's information designated "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

## 12.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

12.1 If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately: (a) notify the Designating Party, in writing, of the unauthorized disclosure(s); (b) use its best efforts to retrieve all copies of the Protected Material; (c) inform the person(s) to whom unauthorized disclosures were made of all the terms of this Order; and (d) request that such person(s) execute the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A).

### 13. LIMITATIONS ON PATENT PROSECUTIONS AND REEXAMINATIONS

13.1    Absent written consent from the Producing Party, any individual affiliated with a

Receiving Party who reviews or otherwise learns of non-public technical information relating to

one or more of the products accused of infringement in this litigation

| [Plaintiffs' Statement: Plaintiffs disagree that the Court considered or ruled on the relevant issue—whether Defendants or their counsel can use Plaintiffs' confidential information to pursue reexaminations—and therefore propose the addition of the following language: "or non-public information related to patent ownership, valuation, or acquisition strategy"] | [Defendants' Statement: The Court has already ruled on this provision and no further limitations are appropriate. Moreover, the Defendants do not agree that the "relevant issue" is "whether Defendants or their counsel can use Plaintiffs' confidential information to pursue reexaminations." The Protective Order would prohibit use of Plaintiffs' confidential information for this purpose without the additional language that Plaintiffs propose. Plaintiffs' proposed language is unnecessary, overbroad, and would unfairly prevent the Receiving Party from pursuing reexaminations based on purely public information.] |
| --- | --- |

that has been produced in this case and designated as HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE by a party

shall not participate, directly or indirectly, in the prosecution of any patent or patent application

anywhere in the world (including, without limitation, originally filed applications, provisionals,

non-provisionals, continuations, divisions, continuations-in-part, reexaminations, or reissues),

nor engage in the acquisition (either directly or indirectly) of any patent or patent application

(including, without limitation, originally filed applications, provisionals, non-provisionals,

continuations, divisions, continuations-in-part, reexaminations, or reissues) involving the

technology at issue in this litigation. Notwithstanding the forgoing, these provisions are not

intended and shall not preclude any Outside Counsel from participating in any reexamination

26

proceedings involving the patents-in-suit except that Outside Counsel shall not draft or assist in the drafting of any claim or amendment to any claim of the patents-in-suit for a period ending one year after the resolution of this litigation (including any appeals). This prohibition shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual. This prohibition shall extend from the time of receipt of such information through and including two (2) years following the entry of a final nonappealable judgment or order or the complete settlement of all claims against the Party or Parties whose information was received or reviewed.

## 14. **MISCELLANEOUS**

14.1    Right to Further Relief: Nothing in this Order abridges the right of any person to seek further or additional protection of any Disclosure or Discovery Material or to seek modification of the Order by the Court in the future.

14.2    Right to Assert Other Objections: By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

14.3    No Restriction on Advising Client: Nothing in this Order shall be construed to prevent Counsel from advising their respective clients regarding this case, even if Counsel must rely on Protected Information in formulating such advice, as long as no Protected Information is disclosed in violation of this Order.

14.4    Limitation on Discovery from Experts: Absent good cause, drafts of expert reports are not discoverable. Additionally, communications between an Expert (as defined in

27

Section 2.5) and a Party's Counsel are not discoverable except as provided in Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure. Reports and materials exempt from discovery under this section shall be treated as attorney work product for the purposes of this case and Protective Order.

## 15.    INADVERTENT PRODUCTION OF PRIVILEGED DOCUMENTS

15.1    If any Party, through inadvertence, produces any Disclosure or Discovery Material information that it believes is immune from discovery pursuant to the attorney-client privilege, work product immunity, or any other applicable privilege or immunity, the Producing Party may give written notice to the Receiving Party that such Disclosure and Discovery Material is deemed privileged and that return of such Disclosure and Discovery Material is requested. Upon receipt of such written notice, the Receiving Party shall immediately gather the original and all copies of such Disclosure and Discovery Material of which the Receiving Party is aware and shall immediately return the original and all such copies to the Producing Party. The return of such Disclosure and Discovery Material to the Producing Party shall not preclude the Receiving Party from later moving the Court to compel production of the returned Disclosure and Discovery Material on the basis that any privilege applicable thereto has been waived. However, the inadvertent production of   privileged or otherwise protected Disclosure or Discovery Material in this case shall not be deemed—and the Parties expressly waive their rights to argue otherwise—to constitute a waiver of any privilege or protection that otherwise would adhere to the Disclosure or Discovery Material information.

SO ORDERED THIS **24th** day of **July**, 2012.

The Honorable Leonard P. Stark

28

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY STIPULATED

## PROTECTIVE ORDER

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the District of Delaware on [date] in the case of Intellectual Ventures I LLC et al. v. Altera Corp., et al., C.A. No. 10-1065-LPS. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the District of Delaware the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this Action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my Delaware agent for service of process in connection with this Action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
            [printed name]

Signature: _____
           [signature]

29