

March 27, 2015

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124, Unit 26
Wilmington, DE 19801-3556

      RE:   *TQ Beta, LLC v. DISH Network Corporation, et al.*,
            <u>C.A. No. 14-cv-848-LPS-CJB</u>

Dear Chief Judge Stark:

      Plaintiff TQ Beta submits this letter in connection with the April 2, 2015 discovery teleconference regarding the Proposed Protective Order. The parties have agreed to significant restrictions and protections on the Defendants' confidential information, including burdensome source code inspection procedures and a broad prosecution bar. The Defendants, however, seek to impose three additional restrictions: (1) a prosecution bar provision that would prohibit TQ Beta's outside counsel for assisting in aspects of post-grant proceedings and *Inter Partes* Review ("IPR") proceedings that have nothing to do with potential claim amendments; (2) an acquisition bar that presumes that TQ Beta's outside counsel will violate the Protective Order, has little to do with protecting the disclosure of the Defendants' trade secret information, and will harm TQ Beta's counsel's ability to legitimately represent their clients; and (3) a source code inspection procedure that requires TQ Beta's counsel and reviewers to travel to Houston, even though none of the Defendants' source code originates from Houston and the Defendants' outside counsel have offices in Dallas (where TQ Beta's outside counsel is located) and Austin (where TQ Beta's primary source code reviewers are located). For the reasons below, TQ Beta respectfully requests that the Court enter its provisions of the Proposed Protective Order.

**I.**     <u>**Prosecution Bar**</u>

      The parties' dispute regarding the prosecution bar is narrow: can TQ Beta's outside counsel assist in potential post-grant and IPR proceedings so long as counsel does not advise on potential claim amendments (TQ Beta's position) or is TQ Beta's outside counsel barred from providing *any* assistance in a post-grant or IPR proceeding, even if that assistance undisputedly has nothing to do with potentially amending the claim language—such as reviewing draft briefs in the IPR proceedings or providing non-confidential deposition transcripts (Defendants' position). The agreed portions of the prosecution bar already ensure that TQ Beta's outside counsel will not be involved in drafting or amending patent claims that relate to the technology of this case for a period after the lawsuit resolves. The Defendants attempt to expand the scope of that bar to preclude any involvement in post-grant or IPR proceedings, contending that TQ Beta's proposal is unworkable because supposedly *every* aspect of an IPR proceeding or argument "necessarily informs on the issue of potential claim amendments." But amending claim language—changing the actual claim language—is a specific exercise and pleading at the Patent Office during post-grant and IPR proceedings, *see* 37 C.F.R. § 42.121, and claims are not amended by arguments about the scope of the claims or arguments about whether the prior art

meets the claim limitations. *See Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1364 (Fed. Cir. 2012) (en banc) (holding that, in the patent context, an "amendment" connote "formal changes to the actual language of a claim," not claim construction arguments). Thus, there is a clear demarcation between claim amendments and the other aspects of the proceedings.

The Defendants' position also proves too much. TQ Beta's outside counsel may, in the course of this litigation, raise arguments about the construction of the claims or whether prior art references meet the claims, all of which will be public and may be used in a post-grant IPR proceeding without violating the Protective Order. The Defendants, however, seek to make it a violation of the Protective Order if that same counsel makes the same arguments in a public post-grant or IPR proceeding. That is illogical, does not protect the Defendants' interest in the misuse of their confidential information, and will burden TQ Beta by restricting the ability of its outside litigation counsel to coordinate with and assist post-grant and IPR counsel.

## II.    Acquisition Bar

The parties dispute whether an acquisition bar is appropriate in this case, and TQ Beta proposes that it is not. The Defendants seek, as a price to view their sensitive information, a provision that will preclude TQ Beta's outside counsel from engaging in potential acquisition and litigation activities against the Defendants for eighteen months after the resolution of this case, even if that activity does not involve the use of the Defendants' confidential information and is solely based on publicly available information. The agreed Protective Order already expressly prohibits the use of sensitive information for the purposes of "patent prosecution or acquisition," ¶ 7, which counsel will abide by, and the Defendants lack good cause to add an additional restriction which has little to do with protecting the disclosure of the Defendants' trade secret information. The Defendants lack good cause to add that provision.

When presented with acquisition bar proposals, the Court has noted that "[t]he attenuated risks identified by Defendant[s] do not justify imposition of a bar that could severely harm Plaintiff's counsel (and, therefore, Plaintiffs)." *Copy Protection LLC v. Netflix Inc.*, C.A No. 14-cv-365-LPS (Dec. 16, 2014 Oral Order at D.I. 28 (attached as Exhibit A)); *see also IP Learn LLC v. Beeline Acquisition Corp.*, No. 11-825-RGA (October 23, 2012 transcript at 9 (attached as Exhibit B)); *Intellectual Ventures I LLC v. Canon Inc.*, No. 11-792-SLR (December 18, 2012 transcript at 4-8 (attached as Exhibit C)); *Personalized Media Communications, LLC v. Amazon.com, Inc.*, 13-1608-RGA (March 21, 2014 transcript at 54 (attached as Exhibit D)); *Intellectual Ventures I LLC, et al. v. AT&T Mobility LLC*, 12-193-LPS (June 5, 2014 transcript at 46-49 (attached as Exhibit E)); *Graphics Properties Holdings, Inc. v. Asus*, 12-210-LPS (July 1, 2014 transcript at 38 (attached as Exhibit F)); *Pragmatus Telecom, LLC v. Genesys Tele. Lab., Inc.*, 14-cv-26-RGA (Nov. 12, 2014 Oral Order a D.I. 35 (attached as Exhibit G)); *CRFD Research, Inc. v. Netflix Inc.*, C.A. No. 14-cv-314-GMS (Jan. 5, 2015 transcript at 14 (attached as Exhibit H))[1]. The two decisions that the Defendants cite are inapplicable: in *St. Clair* the acquisition bar was not addressed by the Court because the Court merely entered an agreed upon

---

[1] Counsel for Defendants in the *CRFD Research* action is the same counsel for Defendants here and is seeking a similar bar that was determined to be "fundamentally anticompetitive" by the Court in the *CRFD Research* action. *Id.*

protective order that included the bar, and the Court in *Intellectual Ventures v. Altera*, upon further consideration, has repeatedly rejected acquisition bars. *See* Ex. E at 48–49 (noting that the acquisition bar in *Intellectual Ventures v. Altera* "wasn't really the focus of what was in dispute" and that, after having occasion to "think it through more carefully," declined to enter an acquisition bar); *see also supra*. Indeed, it is "the general practice in this district and other courts" to not enter acquisition bars. Ex. F, at 5–6, 38.

The Defendants' sole argument for departing from this practice is its unfounded allegation that TQ Beta's outside counsel will violate the Protective Order because it represents plaintiffs in other lawsuits. There is no evidence of that, and that argument further shows that this provision is not about protecting the inadvertent disclosure of trade secret information: it is instead designed to disqualify plaintiffs law firms from representing patentees in litigation against the Defendants in the future.

### III.   Source Code Inspection Procedures

The parties have two outstanding disputes regarding the source code inspection procedure: the location of the inspection and the duty to log portions of source code that are used in court filings, at depositions, in hearings, or in expert reports. TQ Beta has agreed to significant source code inspection restrictions to protect the Defendants' source code, including limiting who can access the code, when they can access it, notice periods, limitations on printing, logging certain paper copies, and similar provisions.

Despite these one-sided restrictions, the Defendants propose that all source code inspection must occur at its counsel's offices in Houston because producing the code in their counsel's Dallas or Austin offices requires shipping the code and requires its counsel to travel from Houston to Dallas. But the code has to be transmitted somewhere—the Defendants' code is located in Colorado, India, and California—and there is no additional burden to transmit that code to the Austin or Dallas office of Baker Botts in the first place. In addition, there is no need for Defendants' counsel to be present during the code review—the Protective Order precludes the Defendants' counsel from visually monitoring the inspections (10(d)(iv)). In contrast, none of the code reviewers are located in Houston. TQ Beta's counsel is based in the Dallas area and its primary source code reviewers are based in Austin. TQ Beta has agreed to significant source code restrictions and, the Defendants should make their code available in a convenient location.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc:   Counsel of Record (via E-File)