# EXHIBIT C

1

1              IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3                 - - -

4

5  INTELLECTUAL VENTURES I LLC  :   CIVIL ACTION
    and INTELLECTUAL VENTURES   :
    II LLC,               :

6                      :

             Plaintiffs,  :

7                      :

      vs.               :

8                      :

    CANON INC.; CANON U.S.A.,   :

9  INC.; OLYMPUS CORPORATION;  :
    OLYMPUS CORPORATION OF THE   :

10  AMERICAS, OLYMPUS AMERICA   :
    INC. and OLYMPUS IMAGING    :

11  AMERICA, INC.,        :
                      :

12          Defendants.  :   NO. 11-792 (SLR)

13                    - - -

14

15              Wilmington, Delaware
              Tuesday, December 18, 2012
              10:55 o'clock, a.m.

16                  - - -

17

18  BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

                 - - -

19

20

21

22

23

24                    Valerie J. Gunning
                    Official Court Reporter

25

1    a place as any to start or whether plaintiff has some issues

2    that we need to address in addition.

3             MR. KELLMAN:  Your Honor, we can go through the

4    defendants' issues.  That's fine.

5             THE COURT:  Okay.  All right.  Well, I guess the

6    first broad issue is the protective order?

7             MR. PENSABENE:  That's correct, your Honor.

8             THE COURT:  All right.

9             MR. PENSABENE:  As we've laid out in our letter

10   to the Court, there are really four issues relating to the

11   protective order, all revolving around the prosecution bar

12   and the patent acquisition bar.

13            THE COURT:  Which you say that last as though

14   this has been around a long time.  I've only seen it in the

15   last couple of months, and I, frankly, don't understand it

16   and don't understand why anyone thinks it's appropriate.

17   But we will get to that when we get to that.

18            MR. PENSABENE:  I can address that right away,

19   your Honor.

20            THE COURT:  All right.

21            MR. PENSABENE:  The patent acquisition bar,

22   you're correct, is a relatively new thing in protective

23   orders, but I think that's more a function of fact that

24   patent litigation has evolved and continues to evolve and

25   that you do have entities, such an as IV, Acacia, et cetera,

1    which are in the business of going out, acquiring patents

2    for the purpose of asserting them against as many companies

3    as they possibly can.

4            The idea is, is that having had access to

5    Canon's confidential information, information that's not

6    publicly available about our products, the attorneys who

7    have access to that information should not then be allowed

8    to go out, shop for patents, and inadvertently even use that

9    information in deciding which patents to purchase and which

10   ones not to purchase.

11           We, quite frankly, are a little confused that IV

12   is even fighting on this issue because the exact issue of

13   the patent acquisition bar was, in fact, litigated in this

14   court before Judge Stark.

15           THE COURT:  But I've rejected it in every

16   protective order I've had that suggested it.  So...

17           MR. PENSABENE:  That may be the case, your

18   Honor.  We recognize that.  But, again, I think that -- and

19   I'm not familiar with every case in which your Honor has

20   addressed that, but, again, I think --

21           THE COURT:  I don't address it.  I just cross it

22   out because I don't think it merits addressing in any kind

23   of written order.

24           So I mean, to me, once again, the bar is

25   confusing the issue of whether the patents that are being

1      issued by the Patent and Trademark Office are valid and

2      enforceable and should be given any value with the issue

3      that you're really talking about.

4               And, quite frankly, I'm assuming that patents,

5      when they issue, are valuable, and I don't -- I just see it

6      as such a --

7               MR. PENSABENE:  If I may, your Honor, I think a

8      good analogy might help.

9               THE COURT:  I doubt it.

10               MR. PENSABENE:  If you'll bear with me and give

11      me the chance.

12               The reason why you have protective orders, for

13      example, is to avoid and prevent a competitor who actually

14      makes products from using your confidential technical

15      information in developing their products.  You don't want

16      them to take an unfair advantage of that.

17               In the case of IV and companies like it, I'd

18      submit that IV does not make products, no secret about that.

19      Their product, what they do is acquire patents.  Their

20      product is acquiring patents and licensing them.

21               So the same reasoning that applies as to why you

22      don't want a competitor's engineers having access to the

23      confidential information and being able to use that in the

24      products, I think the same arguments would apply to IV, and

25      not allowing them to use it in their products, i.e.,

1    building their patent portfolio.  You would allow them to go

2    out, selectively pick which patents they want to acquire in

3    their efforts to assert them against companies such as

4    Canon.

5              THE COURT:  I find that a very cynical view of

6    the world, but I don't know whether we want to do issue by

7    issue.  If we want to do issue by issue, then I would like

8    to hear from plaintiffs' counsel on that particular

9    paragraph.

10             MR. PENSABENE:  Sure.

11             MR. KELLMAN:  Good morning, your Honor.

12             THE COURT:  Good morning.

13             MR. KELLMAN:  Well, I'm not sure I have a lot

14   to say about it in light of your comments.  The acquisition

15   bar is a relatively brand-new thing we started hearing

16   about lately, and, quite frankly, I don't understand

17   either.

18             We have an obligation as counsel in this case to

19   look at all sorts of highly confidential information on a

20   daily basis for lots of different clients.  It's sort of the

21   nature of what we do for a living, and we're bound by

22   protective orders in the case not to use them in

23   inappropriate ways.  There are lots of things we could

24   do inappropriately, but we don't.  That's because we are

25   here and, if we do, we suffer the consequences for doing

1      that.

2              As far as advising, this is not an IV-specific

3      clause.  This is actually a clause that they are looking to

4      attack our firm from being able -- this is a professional

5      attack on us to be able to prevent us from doing our

6      professional responsibility with respect to other clients,

7      not just Intellectual Ventures.

8              If I'm representing a large company that is

9      different in nature from Intellectual Ventures, that has

10     products that are out on the marketplace and is competing

11     with those products, I would still get -- gain access to

12     information.  If I wanted to use it inappropriately, I

13     certainly could by looking the vast portfolios of another

14     large company and trying to assert those, but I don't.  And

15     our firm does not do that.

16             There's no particular reason to go way beyond

17     what we already, what the protective order already does,

18     which is say you cannot use the information other than in

19     this particular lawsuit.  So we won't, and we will abide

20     by that.  There's no reason to add extra protections in

21     there that don't allow the law firms to go and do their

22     own work.

23             THE COURT:  I agree.  I'm not ready to think

24     this is necessary in our world and I will not embrace it in

25     this case.